## THOMAS *v.* THE STATE.

1. The charge was adapted to the evidence, and impartially stated the contentions of both the State and the accused.
2. Where the court provisionally admits evidence on the promise of the solicitor-general that he will subsequently connect the same and show its relevancy, it is not incumbent on the judge, of his own motion, to determine whether such promise has been kept and to exclude the testimony, without a request to that effect by the defendant.
3. The State's counsel should not in his argument refer to the prevalence of crime in that part of the county where the crime is alleged to have been committed. The remarks here complained of were irrelevant, but afford no ground for a new trial, as no objection was made to the statement, and no ruling of the court was invoked.
4. An explicit and comprehensive charge on the subject of reasonable .doubt, wherein the jury are instructed in effect that if after considering the entire case they should have a reasonable doubt of the defendant's guilt it is their duty to acquit, sufficiently informs the jury that the burden is on the State to prove the defendant's guilt.
   (a) A statement in such a charge that the reasonable doubt of the law is one that grows out of the evidence is not erroneous because of the exclusion of any inference that such a doubt may arise from the want of evidence, or conflict in the evidence.
5. There being evidence of flight to avoid arrest, it was not error to charge the jury that "flight is a circumstance when it is proven; and the jury must consider that just like they would any other fact; and determine what was the cause of the flight. Because a man fled from the scene of the homicide is not a conclusive reason that he is guilty under the law; but when flight is proven the jury must take that circumstance of flight and consider it under the same rules that they would consider any other piece of evidence in the case. In considering it, determine why he fled, if it has been proven that he fled. Was it from conscious guilt in shooting the man, or was it from fear, or was it from some other cause, some cause other than conscious guilt of having committed a crime? That is for you to determine; and when you have determined that, then you will give to that circumstance, if it has been proven, of flight, just the weight you think it ought to have in determining this case. The mere circumstance that the man fled, when taken by itself, is not sufficient to convict; but added to other sufficient circumstances, the jury will give it just such weight,

when it has been proven, as they think it ought to have and bear in relation to the other circumstances which have been proven in the case."

6. A charge in a capital case, that "it is within the province and power of the jury, if they should find the defendant guilty, and if they believe that it ought to be so done, or if they wish it so done, to recommend that he be punished by imprisonment in the penitentiary for life; there is no rule of law by which you are to be guided in making a recommendation of that character; it is entirely a matter for your determination," is not open to the criticism that it was calculated to prejudice the jury, and prevent them from recommending that the prisoner be punished by imprisonment for life.

7. A new trial will not be granted because of alleged newly-discovered evidence, cumulative and impeaching in character, and especially so where neither movant nor his counsel submits affidavits showing their ignorance of such testimony at the time of trial.

Argued October 24,—Decided November 12, 1907.

Indictment for murder. Before Judge Little. Muscogee superior court. July 10, 1907.

*W. H. McCrory* and *H. V. Hargett,* for plaintiff in error.

*John C. Hart, attorney-general,* and *S. P. Gilbert, solicitor-general,* contra.

Evans, P. J. Bud Thomas was indicted for the murder of Prince Hollis; was convicted without a recommendation; made a motion for a new trial, which was refused, and he brings error to this court. The case as made out by the State was, that on the night previous to the homicide the door of the house where the deceased lived had been broken down. The next morning the deceased approached one Reese and accused him of breaking it down. The accused then interposed and said to Prince Hollis, "You say that Henry Reese broke into your house last night?" The deceased replied, "Yes." The accused then said, "It is a damn lie, it was not him." Thereupon the deceased said, "You are a lie; it was him." The accused instantly drew his pistol from his pocket and presented it at the deceased, who walked off the little bridge where he was standing at the time of this conversation. The accused told him if he did not come back he would kill him. The deceased turned around in the direction of the store door as if to go into the store. The accused then told him again that if he walked off he would shoot him, and presented his pistol at the deceased, who then called to his son to bring him a gun to defend himself. Henry Reese then caught the accused by the arm, and when he released his hold the accused fired at the deceased, inflicting a mortal wound.

As soon as the accused fired the shot he ran away, and, while running, the son of the deceased fired at him. The sheriff, though he made every attempt to find the accused, was unable to secure his arrest for several months after the homicide. The defendant, in his statement, admitted the homicide, but contended that he was justifiable. He contended, that when the deceased charged Reese with breaking into his house, he said to the deceased that Reese did not break down the door, but that Reese and the deceased's son had a fuss out in the road, and the son cut Reese; that Reese pursued him, and that his son broke down the door. Thereupon the deceased called the accused a "God damn liar," and said he would kill him, and, before the accused could move, the deceased caught him in the collar with his hand, struck at him with a knife, and cut his coat and shirt; and as the deceased attempted to raise his hand the second time, the accused jerked loose from his grasp and started to run, being closely pursued by the deceased. Deceased was pressing him so hard that he drew his pistol and fired the fatal shot.

1. The court, in a very full and elaborate charge, instructed the jury on the law of murder, voluntary manslaughter, and justifiable homicide. In his motion for a new trial the accused complains that the court unduly stressed and emphasized the contentions of the State, and omitted to charge a theory of the defense as presented by the evidence. We have carefully examined both the charge and the evidence, and we do not think that the charge is open to either of these criticisms. There is no complaint that the court committed any error in defining the various grades of homicide, in stating the law of self-defense or defense of one's person.

2. During the course of the cross-examination of one of the defendant's witnesses, it was elicited that shortly after the homicide he had gone to Birmingham, and the solicitor-general was interrogating him as to the cause of his visit, and asked him if he had not been before the recorder since his return, and the witness answered that he had. Objection was made by the defendant's counsel to the evidence, on the ground of irrelevancy; whereupon the solicitor-general stated that later on he would show its relevancy by connecting it with other evidence (which he failed to do). On this statement of the solicitor-general, the court pro-

visionally allowed the testimony to remain before the jury, and there was no subsequent motion made by the defendant to exclude it. Where the court provisionally admits evidence on the promise of the solicitor-general that he will subsequently connect the same and show its relevancy, it is not incumbent upon the judge, of his own motion, to determine whether such promise has been kept, and to exclude the testimony, without a request to that effect by the defendant. *Stone* v. *State,* 118 *Ga.* 705.

3. In the progress of his argument, the solicitor-general used the following language: "Gentlemen of the jury, the time has come when we should hew to the line; the experience of this week in this court shows you there is a section of country just east of the city that seems to be no man's land. Law and disorder reigns supreme; that section commences as you cross the corporate limits of our city, and extends from the East Highlands down through the notorious 'Bottom.'" The judge certifies that he did not hear the remarks, and that no objection was made by counsel for defendant to the propriety or relevancy of the solicitor's statement. It would have been better for the solicitor to have omitted any reference to the prevalence of crime in any section of the county. The law points out the course to be pursued when foreign matter is injected into the case by means of argument. Civil Code, §4419. The court should interpose without request, and by proper instruction seek to remove any prejudicial effect the remark may likely produce. If the transgression is of such a character as to impugn the fairness of the trial, a mistrial may be declared. At the same time it is the duty of counsel to bring to the attention of the court any remark of adverse counsel which he thinks is improper and hurtful to his client's case, and invoke the ruling of the court. He will not be permitted to allow the propriety of the remark to pass unchallenged, and complain for the first time in a motion for new trial. The rule is established, by numerous authorities, that improper remarks by the prosecuting attorney in a criminal case, though unrebuked by the judge, will not work a reversal of the judgment of the lower court, where no objection was made to such statements, and no ruling of the court was invoked. *Bridges* v. *State,* 110 *Ga.* 246; *Robinson* v. *State,* 109 *Ga.* 506; *Herndon* v. *State,* 111 *Ga.* 178.

4. The court delivered to the jury a very comprehensive instruction on the subject of reasonable doubt. He very clearly stated that if, after considering the entire case, the jury should have a reasonable doubt of the defendant's guilt, it was their duty to return a verdict of not guilty. He did not in hæc verba instruct the jury that the burden of proving the defendant guilty rested upon the State; and this verbal omission is alleged as error. The law regards substance more than form. The instruction given embraces the proposition that the burden of proof is upon the State, and that the evidence must show the defendant's guilt beyond a reasonable doubt, before a conviction could be had. After defining what was a reasonable doubt the court added that the reasonable doubt of the law is one that grows out of the evidence. This addendum is criticised as excluding an inference that such a doubt may arise from the want of evidence or the conflict in evidence. The law requires that the evidence shall show the guilt of the accused beyond a reasonable doubt; if the evidence be not of this degree of strength it raises a reasonable doubt of guilt. So, after all, the reasonable doubt grows out of a consideration of the evidence, its insufficiency or conflicting character. *Long* v. *State,* 38 *Ga.* 491; *O'Dell* v. *State,* 120 *Ga.* 52.

6. There was evidence of the flight of the defendant immediately after the commission of the homicide, and that several months elapsed before he was arrested. Three of the grounds of the motion for new trial complain of error in charging on the subject of flight. Certain excerpts from the charge on that subject are set out, and error is assigned thereon because the charge assumed that other circumstances had been proved which the jury could consider in connection with that of flight, and convict; and further, that it was not sufficiently comprehensive, in that the jury might find, from the evidence, that the flight of the defendant was not for the purpose of eluding arrest, but to save his own life, in which event the defendant's flight from the scene of the homicide could not be properly considered as a circumstance indicative of guilt. The entire charge of the court is incorporated in the record, and it appears that the excerpts did not contain the complete instructions on this subject. We have incorporated the substantial features of the charge on this subject in the headnote; and when the portions complained of are taken in connection with the

entire charge, it will appear that the criticisms are unfounded. In all essential particulars the instructions here given on the subject of flight followed the charge which was approved in *Smith* v. *State,* 63 *Ga.* 168.

6. The charge set out in the sixth headnote was assigned as error, the criticism being that it was "calculated to prejudice the jury and prevent said jury from recommending the prisoner be punished by imprisonment for life in the penitentiary." In *Cohen* v. *State,* 116 *Ga.* 573, where this question was discussed and many of the previous rulings of this court were cited and considered, it was ruled, that "the jury in the trial of one who is charged with murder, if they find the accused guilty, are invested by law with the power of fixing the punishment, by recommendation to life imprisonment. Whether they will so recommend or not is a matter solely in their discretion, which is not limited or confined in any case." In the present case the jury were instructed that "if they believe that it ought to be so done, or if they wish it so done," it is within their power and province to so recommend, and is a matter entirely for their determination. The charge here given was in compliance with the rule laid down in the *Cohen* case, and is not subject to the objection urged. *Hill* v. *State,* 72 *Ga.* 131; *Thomas* v. *State,* 89 *Ga.* 479.

7. The 20th ground of the motion is based upon newly-discovered evidence. The record does not disclose any affidavits from the accused or his counsel that they were ignorant of this testimony at the time of the trial. An examination of the affidavits of the witnesses shows that the newly-discovered evidence is merely cumulative and impeaching in character. There was no error in overruling the motion for new trial on this ground. Civil Code, § 5481; Penal Code, § 1061; *Monts* v. *State,* 120 *Ga.* 144; *Martin* v. *State,* 127 *Ga.* 39.

The motion for new trial contains other grounds, which it is not necessary to discuss, further than to say that they point out no errors which would cause a reversal of the judgment. There was no error complained of requiring the grant of a new trial; and the evidence fully supporting the verdict, which was approved by the trial judge, the judgment is

*Affirmed. All the Justices concur.*