## DuPRE *v.* THE STATE.

1. The defendant on conviction filed a motion for a new trial, four grounds of which were based on alleged newly discovered evidence as to prejudice and bias of named jurors. Movant contends that the affidavits attached to the counter-showing cannot be considered by this court, because the same were not filed until three days after the motion was overruled, and because the same had never been made a part of the record, nor attached to the motion for a new trial, nor made a part of the brief of evidence or the bill of exceptions. The case being for decision by a full bench of six Justices, who are evenly divided in opinion on the question as to whether the court could consider the answer of the solicitor-general together with the affidavits attached as exhibits, three of whom, Fish, C. J., Beck, P. J., and Atkinson, J., being of the opinion that the same could not be legally considered, and three of whom, Hill, Gilbert, and Hines, JJ., being of the contrary opinion, and holding that when considered no abuse of discretion appears in the judgment overruling the motion for a new trial, the judgment of the court below on this point stands affirmed by operation of law.

2. There was an additional counter-showing by means of having witnesses summoned before the judge presiding in the criminal division of Fulton superior court, where they were examined under oath; and their evidence was, by order of such judge, made a part of the record, ordered filed, and was so filed, and appears in this record as specified in the bill of exceptions. At the hearing upon the motion for new trial no objection was offered to the introduction of this testimony. No question is presented for decision as to the consideration of this evidence.

3. The court did not err in the following charge to the jury: "If a man

makes up his mind to kill another unlawfully, and executes the intention, then that is a case of express malice connected with the killing, and that is a manifest case of murder."

4. Error is assigned on the following charge to the jury: "A reasonable doubt, of course, is a doubt that has arisen or grown out of the consideration of the evidence in the case. If the evidence, upon a fair and full consideration, leaves in the minds of the jury no reasonable doubt, then the evidence is sufficient to authorize a conviction. If the evidence satisfies your minds to a reasonable and moral certainty, the evidence is sufficient." The criticism is that this charge left out of consideration the defendant's statement, and in effect instructed the jury that the reasonable doubt must grow out of the evidence alone or the lack of evidence. The charge is not subject to the criticism made, and no error is shown.

5. Error is assigned on the following charge to the jury: "The definition of voluntary manslaughter is an intentional killing, upon a sudden heat of passion; that is, if the passion, the existing of the passion, may be or is caused by some actual assault upon the person killing, or an attempt to commit a personal injury upon the person killing, or other equivalent circumstances sufficient, in the opinion of the jury, to justify the excitement of passion and to exclude all idea of malice." The criticism is that the charge was not an accurate definition of the offense of voluntary manslaughter, and that it was not in the language of the statute defining that offense, and that the language used was confusing and not easily understood by the lay mind. The charge contained the substance of the definition of voluntary manslaughter as stated in the Penal Code; and no error is shown.

6. Error is assigned on the following charge: "If the killing was not done with a motive of that sort, but was done purely by reason of passion excited in him on account of disproportionate violence, or the unreasonable violence, under the circumstances employed by the arresting officer, or the deceased in this case, then you may consider the killing as being reduced to voluntary manslaughter." The criticism is that this charge was error, because the language was inaccurate, and because it precluded the jury from giving due weight and consideration to material circumstances in the case, the effect of which, in their minds, might have been to reduce the crime from murder to voluntary manslaughter. It is not pointed out in what respect the language is inaccurate, nor is there any statement of what material circumstances were excluded from the consideration of the jury. Therefore no error is shown in this ground of the motion.

7. Movant complains that the court erred in refusing a written request, duly presented, to give in charge to the jury the following: "Manslaughter is the unlawful killing of a human creature, without malice either express or implied, and without any mixture of deliberation whatever, which may be voluntary, upon a sudden heat of passion, or involuntary, in the commission of an unlawful act, or a lawful act without due caution and circumspection." Under our view of the evidence, the refusal to charge the jury as requested in this ground was not error. The court did submit the issue of voluntary manslaughter under instructions which were fair and legal, embodying in substance the

principles requested; though that issue was not involved under the evidence or under the statement of the defendant.

8. Movant complains that the court erred in refusing a written request, duly presented, to give in charge the following: "If you believe from the evidence that just prior to the alleged shooting of Irby C. Walker, deceased, by the defendant, that the defendant had committed a felony in the presence of the deceased, and was attempting to escape from the place of its commission, the deceased had a right to arrest the defendant, either with or without a warrant; and if you believe from the evidence that the deceased did attempt to arrest the defendant, and that the defendant, in order to prevent being arrested, shot and killed the deceased, he would be guilty of murder. But if you believe that the deceased assaulted the defendant, or made an attempt to inflict a serious personal injury upon him, or if you believe that the conduct of the deceased towards the defendant, and the manner in which he seized him, if he did seize him, was such as to lead the defendant to believe that the deceased intended then and there to inflict a serious personal injury upon him instead of to arrest him, and the defendant shot the deceased under those circumstances, and without malice, he would be guilty of voluntary manslaughter." The court properly refused this request, the same not being applicable under the evidence or the statement of the accused.

9. Movant complains that the court erred in refusing a written request, duly presented, to charge the following: "If the evidence adduced to establish the homicide presents two conflicting theories, one of malice and the other the absence of malice, it becomes a question of fact to be decided by the jury as to which aspect of the evidence is the real truth of the occurrence; and if you believe beyond a reasonable doubt that the defendant is guilty of either murder or of voluntary manslaughter, but at the same time have a reasonable doubt as to which of these offenses he is guilty of, it would then be your duty to give him the benefit of the doubt and find him guilty of the lower grade of the offense, to wit, voluntary manslaughter." The court submitted the issues of murder and voluntary manslaughter in language more favorable to the accused than the evidence required, and there was no error in refusing this request.

10. Movant complains that the court erred in giving the following charge to the jury: "You hear the evidence; you are citizens of this county; the jury is supposed to know what ought to be done with reference to fixing the punishment; the court has no suggestion to make to you with reference to that; you may consider what the object of punishment is, consider all the facts and circumstances of the case, circumstances of mitigation or palliation, or circumstances of aggravation, anything that you think ought to be considered as bearing upon the question of what punishment you should fix." The case being for decision by a full bench of six Justices, who are evenly divided in opinion on the question as to whether the foregoing charge was error, three of whom, FISH, C. J., and ATKINSON and HINES, JJ., being of the opinion that the charge was error, and three of whom, BECK, P. J., and HILL and GILBERT, JJ., being of the contrary opinion, the judgment of the

court below refusing a new trial on this issue stands affirmed by operation of law.

11. The evidence amply authorized the verdict.

No. 3180.  JULY 13, 1922.  REHEARING DENIED JULY 26, 1922.

Indictment for murder.  Before Judge Mathews.  Fulton superior court.  March 15, 1922.

*H. A. Allen, L. H. Foster,* and *W. I. Heyward,* for plaintiff in error.

*George M. Napier, attorney-general, John A. Boykin, solicitor-general, Seward M. Smith, asst. atty.-gen.,* and *E. A. Stephens,* contra.

GILBERT, J.  1. The ninth, tenth, eleventh, and twelfth grounds of the amended motion for a new trial complain that four of the jurors who served in the trial of the case and who returned a verdict of guilty against the defendant were not fair and impartial, and that they entertained a prejudice and bias and had expressed a strong and decided opinion about the case and against the accused before they were accepted as jurors, all of which was unknown to the movant and his counsel until after the return of the verdict. As tending to show the prejudice and bias of the jurors it was alleged that each of them had expressed opinions substantially to the effect that the accused ought to be hung, and that if they were selected on the jury they would stand for a verdict of guilty without recommendation.  It is not necessary to state the exact words attributed to these jurors; the foregoing general statement is sufficiently broad to include the substance of the expressions of each and all of these jurors.  The grounds of the motion were supported by the affidavits of those purporting to have heard the remarks of the jurors, and of witnesses supporting the good character of these witnesses.  The State submitted a counter-showing.  The solicitor-general filed an answer to the rule nisi issued on the motion for a new trial, in which he denied the charge of disqualification of the part of all of the jurors; set out in detail the reasons for such denial and upon what the denial was based, stating therein that the evidence to prove his allegations was contained in affidavits attached thereto as exhibits; and the affidavits were so attached.  The answer to the rule nisi issued by the court to the solicitor-general of the Atlanta Circuit, to show cause why the motion for new trial should not be granted, is in part as follows:

## " COUNTER-SHOWING.

" Georgia, Fulton County. And now comes John A. Boykin, solicitor-general of the Atlanta Judicial Circuit and by virtue thereof prosecuting attorney in the superior court of Fulton County, Ga., and by permission of the court files this answer for and on behalf of the State of Georgia to the amended motion for new trial in the above stated case.

" 1. The State denies that there was any error committed in the trial of the above-stated case, and contends that the evidence not only authorized but demanded a verdict of guilty as rendered.

" 2. The State denies the disqualification of juror I. L. Moultrie as set forth in paragraph 9 of the amended motion, denies that said juror ' was not impartial between the State and the accused, and did entertain a prejudice and bias, and had expressed a strong and decided opinion about the case and against the accused before being accepted on the jury to try said case.' The State avers and contends that 1. L. Moultrie was placed upon the voir dire, had the usual questions propounded to him as provided by law for capital cases, and answered said questions truthfully and honestly in a manner to qualify as a juror in said case. Said juror, I. L. Moultrie, was a qualified juror, and his conduct during the entire trial was that of a fair and impartial juror, honestly seeking the truth. In denial of the contentions of the defendant, as set forth in paragraph 9 of his amended motion, the State submits the affidavits of I. L. Moultrie, W. A. Riley, and W. C. Carroll, hereto attached as exhibits and marked A-1 to A-4, inclusive. In support of and as illustrating the character of I. L. Moultrie for integrity and veracity, the State submits the affidavits of [sixteen persons] hereto attached as exhibits and marked B-1 to B-16, inclusive. In support of and as illustrating the character of W. A. Riley for integrity and veracity the State submits the affidavits of J. M. Carroll, E. Frank Donehoo, A. Atkinson, M. L. Baker, W. C. Chappalear, and W. M. Watkins, hereto attached as exhibits and marked C-1 to C-6, inclusive. In support of and as illustrating the character of W. C. Carroll, the State submits the affidavits of C. D. Owens, J. R. Bailey, C. E. Hutcheson, and M. L. Baker, hereto attached as exhibits and marked D-1 to D-4, inclusive. The State submits that the conduct and demeanor of juror I. L. Moultrie, in the jury-room and while engaged in a consideration

of said case, was that of an honest, conscientious juror, and as evidence thereof submits the affidavits of jurors. [naming six other members of the jury], hereto attached as exhibits and marked O-1 to O-2. The State submits that P. K. Bailey, who testified by affidavit to the facts tending to show I. L. Moultrie was prejudiced and biased against the defendant in above-stated case, is a man of bad character and unworthy of belief, and, in support of that contention, submits the affidavit of R. Sicro, hereto attached as an exhibit and marked E-1."

Then follow in substance the same allegations in regard to the charge of disqualification of the other three jurors, with similar statements of affidavits attached as exhibits to prove such allegations, and in each answer the affidavits as alleged in the answer to be attached thereto were so attached. The answer of the solicitor-general further alleges that other witnesses whose affidavits were attached to the amended motion for a new trial were of bad character; and that their evidence was prompted by prejudice against one of the jurors attacked, because of interest in the case, and for other reasons going to the credibility of the attacking witnesses; attaching as exhibits affidavits tending to prove the allegations made. The answer also shows that the fairness and impartiality of each of the four jurors attacked is supported by the affidavits of six of the jurors in the case whose impartiality was not attacked. In every instance the answer recites the names of the witnesses substantiating the allegations made and that the affidavits of such witnesses were attached as exhibits to the answer of the solicitor-general; and they were so attached. The answer of the solicitor-general concludes as follows: "Wherefore, having answered said amendment to motion for new trial, the State, through its attorney, prays an order overruling said motion and denying a new trial in said cause. John A. Boykin, Sol.-Gen'l." This answer of the solicitor-general was marked "Filed March 18, 1922," by the deputy clerk of the superior court of Fulton County. It may be mentioned that this filing bore the same date as that of the amended motion for a new trial. In the order overruling the motion for a new trial this language is employed: "As to the grounds based upon alleged disqualification of certain jurors, supported by the sworn evidence of witnesses, as to statements alleged to have been made by said jurors indicating great prejudice against

the defendant, and considering this evidence along with the counter-showing made by the State as to want of prejudice and bias of said jurors, also strongly supported by the affidavits of the jurors themselves and by other evidence conflicting with the evidence adduced in behalf of the motion for new trial, I cannot say that any one of the jurors in question was not a fair and qualified juror. I therefore am not justified in setting aside the verdict in said case; and the motion for new trial is denied on all the grounds thereof. H. A. Mathews, J. S. C., M. C." The motion for new trial having been overruled, the movant excepted. In the bill of exceptions it is said: " Plaintiff in error specifies as material to a clear understanding of the errors complained of, *the following portions of the record:* Then follows an enumeration of the various parts of the record specified, and among them the following: " (j) *The counter showing of the solicitor-general to the motion for a new trial as amended, filed March 18th, 1922.* [Italics ours.] (k) The transcript of the evidence taken on the preliminary hearing before the Honorable John D. Humphries, Judge of the Superior Court of Fulton County, and by him certified as true and correct on the 10th day of March, 1922, and filed on the 10th day of March 1922."

It is contended by the movant, that the counter-affidavits attached to the answer of the solicitor-general and specified in the bill of exceptions cannot be considered by this court, because they were not filed with the clerk until March 18, 1922, three days after the motion for a new trial was overruled; that said affidavits have never been made a part of the record in the case by any order of the court; that they have not been attached to the motion for a new trial, are not a part of the brief of evidence, and are not embodied in the bill of exceptions, and not attached thereto as exhibits. As authority for this contention movant cites *Glover* v. *State,* 128 *Ga.* 1 (57 S. E. 101), *Sasser* v. *State,* 129 *Ga.* 541 (59 S. E. 255), and other cases ruling the same principle as that stated in the *Glover* case, to wit: " Affidavits relating to a ground of a motion for a new trial, which are not referred to therein, nor attached to the motion as exhibits, nor filed with the motion as a part thereof, but are separately filed, cannot be considered by this court when transmitted as a part of the record, even though it appear, from a statement of the judge on each affidavit, that the same

was used on the hearing of the motion for a new trial, and each affidavit was actually filed in office. This rule applies to affidavits offered by the movant as well as to those offered by the respondent." If the cases cited and other cases declaring the same principle were applicable, the contention of the movant would undoubtedly be adopted by the court in this case. They are not applicable, for the reasons which we will undertake to show: In the cases mentioned above, affidavits were orally tendered on the hearing, without being attached to any official document, nor were the affidavits themselves official documents. Moreover, the affidavits answering generally the description of those specified in the bill of exceptions or mentioned in the order of the judge were physically bound together with the record, but there was no way for this court to know whether they were in fact the same affidavits as those used on the hearing; and manifestly this court could not consider such unofficial documents. In the present case the answer with the affidavits attached is an official document; a part of the record of the case, and there can be no doubt as to what affidavits the court had in mind in passing his order overruling the motion, nor could there be any as to what affidavits were referred to in the specification quoted from the bill of exceptions. The solicitor-general pursued a practice quite different from the usual and ordinary practice in such cases, by filing a formal written answer to the rule nisi. He was called upon officially to make answer, and he complied by filing his answer officially in writing. While under the usual practice the court would have permitted him to orally tender his counter-affidavits, surely there can be no sound objection in law to the method adopted by that officer in making his answer in a formal written document, fully setting out his contentions, and attaching as exhibits to the answer the affidavits of witnesses to substantiate his allegations. This method is not only justified by the law, but should be highly commended as the better practice. We have, therefore, the official answer of the solicitor-general, regularly filed, regularly considered by the judge in arriving at his decision, and regularly specified in the bill of exceptions, said specification being couched in language which can permit no doubt as to what document is intended to be specified.

But it is also contended that the answer and these affidavits cannot be considered, because they were filed three days after the

formal judgment was rendered overruling the motion for a new trial. The statutes and decisions applicable to the filing and hearing of motions for new trial will not preclude the consideration of this document on that ground. If we were disposed so to do, we might raise an issue as to whether the amended motion for new trial could be considered; for it also was filed on the same day that the answer of the solicitor-general was filed, which was three days after the rendition of the judgment and seven days after the final hearing of the case. Lest it be enquired whether the amended motion was filed pursuant to a provision of the original motion for a new trial, we quote the only authority given therefor. In the rule nisi issued on the filing of the original motion this language occurs: " In the meantime and until the final hearing of said motion, whenever the same may be had, movant is allowed to amend and perfect the motion." In an order continuing the motion for a new trial from the date originally set to a later date this language is used: " The defendant shall have until the final hearing on said motion to complete a brief of the evidence adduced upon the trial of said case, and whatever amendment he may desire to offer to the motion for a new trial." On the date of the hearing the court approved the amendment to the motion for a new trial; but it, like the answer of the solicitor-general, was filed in the office of the clerk of the superior court seven days later. The hearing on the motion for a new trial was had, not in the county of Fulton, where the trial was held, but in Bibb county, by Judge Mathews, who presided at the trial. No objection was made by the solicitor-general to the consideration of the amendment to the motion. The facts are recited because of their relation to the counter-showing. It is well to bear in mind the practice and procedure in this State in regard to hearings on motions for new trial. Where the judge of another circuit presides in the superior court, and a motion for new trial is made and a rule nisi issued thereon by such judge, the hearing is held, as a general rule, not in the county where the trial was had, but in the circuit of the judge who presided, or at some other convenient and agreeable point in the State. Manifestly, great inconvenience would be caused if, on such hearing, either the movant or the respondent should be required to file amendments or counter-showings to the motion before the same were considered by

the judge. Under our liberal rule the court usually by order provides that until the final hearing and until the conclusion thereof amendments may be submitted. If it should be required that these amendments should first be filed, it would result in great delay and expense where the hearing was at a place distant from the county where the trial was had. Therefore it would seem to be in harmony both with letter and logic that amendments to the motion for a new trial and counter-showings should first be considered by the court on the hearing, and the filing occur thereafter. It may be said that the filing must be prior to the certification of the bill of exceptions by the judge, because documents not a part of the record could not be specified in the bill of exceptions. The bill of exceptions in this case was certified by Judge Mathews on March 29th, 1922. Moreover, until the amended motion was filed no reason existed for the filing of the counter-showing, which had application only to the amended motion. Until the filing of the amended motion, although approved by the trial judge, that document had not fully become an official document. Without the existence of the amended motion as an official document there would have been no reason for the filing of the counter-showing, and if the latter had been so filed it would have been useless as a part of the record and an answer to something which did not exist. In the case of *Hilt* v. *Young,* 116 *Ga.* 708 (43 S. E. 76), at p. 710 the court said in regard to a motion for a new trial that "it is the actual filing of the motion in the clerk's office which gives it vitality, and when this is done the motion becomes a valid and subsisting motion and remains so until the final hearing;" and in regard to the grant of a rule nisi on such motion before the filing the court said: "This could have been done before the motion was filed, if it had been presented to the judge during the term, but would certainly not have dispensed with the necessity of filing the motion after the rule nisi was issued." By analogy it would seem that amendments to the motion and counter-showing could lawfully be filed in court after the hearing by the judge, and certainly if filed prior to the certification of the bill of exceptions by the court. Under the facts of this case, clearly the cases cited to support the contentions of the movant are not authority, and we rule that the answer of the solicitor-general was an official part of the record of the case as it appears in this court.

The counter-showing made by the solicitor-general authorized the judge to find that none of the jurors were disqualified for any of the reasons set out in the four grounds of the amended motion referred to in the preceding division of the opinion. On the question of whether or not the jurors entered upon the trial of the case with their minds prejudiced and biased against defendant, the evidence was conflicting, and it does not appear that the discretion of the trial judge was abused. *Hall* v. *State,* 141 *Ga.* 7 (80 S. E. 307), and numerous authorities therein cited. The ruling in the *Hall* case was followed in *Frank* v. *State,* 141 *Ga.* 243 (80 S. E. 1016), and *Godbee* v. *State,* 141 *Ga.* 515 (81 S. E. 876), and continuously in all subsequent cases where the question was raised. In the three cases cited above the attack on the qualification of the juror or jurors was supported by the affidavits of two or more witnesses. Under the evidence submitted on these grounds of the motion the judge was authorized to find that the jurors in question were not disqualified, and the judgment of the court in overruling these grounds of the motion shows no cause for the grant of a new trial. These grounds were based upon newly discovered evidence, and this is not a favored ground. The reasons for the statement that such ground is not favored have been many times stated in the decisions of this court heretofore rendered. *Miller* v. *State,* 151 *Ga.* 710 (2), 713 (108 S. E. 38), and authorities cited.

2. There was an additional counter-showing made by means of having witnesses summoned before Judge John D. Humphries, judge of the superior court of the Atlanta Circuit, where they were examined under oath; and their evidence was, by order of Judge Humphries, made a part of the record, ordered filed, and was so filed and appears in this record as specified in the bill of exceptions. It is contended that this evidence had at the hearing before Judge Humphries cannot be considered on the question of the qualification of the jurors. There was no objection made on the hearing of the motion before Judge Mathews, and no error is assigned because of such consideration. No question is presented for decision as to the consideration of this evidence.

3-9. The headnotes numbered four to nine, both inclusive, do not require elaboration.

10. Movant complains that the court erred in giving the fol-

lowing charge to the jury: "You hear the evidence; you are citizens of this county; the jury is supposed to know what ought to be done with reference to fixing the punishment; the court has no suggestion to make to you with reference to that; you may consider what the object of punishment is, consider all of the facts and circumstances of the case, circumstances of mitigation or palliation, or circumstances of aggravation, anything that you think ought to be considered as bearing upon the question of what punishment you should fix." No error is shown in this charge. The jury were left free and untrammelled to fix the punishment according to their own will. Many cases might be cited where similar charges were held not to be reversible error. In the case of *Duncan* v. *State*, 141 *Ga.* 4 (5) (80 S. E. 317), it was said that the court did not err, after charging the jury in reference to their right to make a recommendation that the accused be imprisoned for life in case they should find him guilty, in adding that "this recommendation may be made by the jury if it sees fit for any reason that occurs to them." In the case of *Elder* v. *State*, 143 *Ga.* 383 (3) (85 S. E. 197), it was said: "The charge: 'But if you think for any reason there are extenuating circumstances which do not reduce it from murder to manslaughter, or justify it, but for any reason you think this man should not suffer the death penalty but should be imprisoned for life, you would express it in your verdict, and that would be the sentence of the court,' will not require a new trial. Such language did not circumscribe or restrict the jury in respect to the exercise of their right of recommendation. *Valentine* v. *State*, 77 *Ga.* 470 (4); *Inman* v. *State*, 72 *Ga.* 269 (6); *Cyrus* v. *State*, 102 *Ga.* 617." In the case of *Butt* v. *State*, 150 *Ga.* 302 (103 S. E. 466), error was assigned on the instruction in regard to the right of the jury to recommend life imprisonment, because the court failed to inform the jury that they had the legal right, power, and authority to make such recommendation in the event of a verdict of guilty for any reason they deemed fit and proper or for no reason at all. The court held that the instruction thus excepted to had no tendency to limit the jury, but was sufficiently broad to authorize the jury to exercise their unlimited discretion as to recommendation. It was further said: "If further instruction as to the unlimited right and power of the jury to recommend life imprison-

ment was desired, an appropriate and timely written request therefor should have been made." This was a decision by a full bench, all the Justices concurring. The instruction in the present case did not limit the discretion of the jury. The court specifically informed the jury that they might consider " anything that you think ought to be considered as bearing upon the question of what punishment you should fix."

A number of cases have been urged as supporting the contrary view, that is, that the charge considered in this division of the opinion required the grant of a new trial. We will consider these cases in detail. We discuss, first, the case of *Johnson* v. *State,* 58 *Ga.* 491, it being argued that this case is older than any of the other cases and has never been overruled. By reference to the charge in that case it is obvious that its language conveyed a totally different meaning from that in the present case. The defendant was charged with cattle-stealing, and the jury had the right to reduce the punishment to a misdemeanor by recommending the accused to the mercy of the court. The court charged as follows: " If you should find him guilty, you may inquire what were the circumstances under which he stole this colored man's cow, and brought her to town to sell her. Were they such as to justify you in recommending him to the mercy of the court? What mitigating circumstances, if he is guilty, are there to warrant you in recommending him to the mercy of the court? If any, he is entitled to their benefit. If, in your judgment, he stole the cow, and there were any circumstances connected with it such as to warrant you in recommending him to the mercy of the court, why then it would be your duty to do it. But if there be none to justify you in recommending him to the mercy of the court, why then you ought not to do it." This charge was held error requiring a reversal. This was plainly a correct ruling, because the court clearly and without the possibility of a misunderstanding on the part of the jury placed the right of a recommendation on whether or not there were circumstances justifying or warranting the jury; and if there were not, the jury was told that it would be their duty not to so recommend. There is no similarity between that charge and the one in this case. Further reference to this case will be made hereinafter in connection with a later case.

In the case of *Hill* v. *State,* 72 *Ga.* 131, the charge of the court

was also totally unlike that in the present case, and also palpably error. The jury were instructed in part as follows: " You are not to be governed in that instance by your sympathy, but by your judgment, to say whether or not it is such a case as it ought to be done. You must be governed by your judgment, approved by the evidence  .  .  in the case and the law applicable to it, and then say what is your duty as twelve upright, sworn jurors." The error in this charge is so obvious that comment is unnecessary.

In *Inman* v. *State, 72 Ga.* 269, the court charged as follows: " If you find him guilty, and the case be one you think you are justified in doing so — the facts and circumstances justify you in doing so,— you can say in your verdict, ' We recommend he be imprisoned in the penitentiary for life.' " Here the right to recommend was plainly stated to the jury to depend on whether or not the facts and circumstances " justified " the jury in so doing: This court held: " The better practice is for the court to call the attention of the jury to the law and merely state to them that, if they think proper, they may, in addition to the verdict of guilty,· recommend that defendant be imprisoned in the penitentiary for life. This was substantially done in the present case, and the language of the court was not such as was calculated to deprive, circumscribe, or restrict the jury in respect to the exercise of their right of recommendation." The case was differentiated from *Hill* v. *State,* supra; and the judgment denying a new trial was affirmed, all the Justices concurring. In the case of *Valentine* v. *State, 77 Ga.* 470, the court charged in part, with reference to the recommendation, as follows: " It is for you to say first whether the testimony satisfies you, beyond a reasonable doubt, as to the guilt of the defendant; if it does, it is your duty to convict. Then if you convict him, it is for you to say whether the facts of this case, whether all the circumstances, warrant you in recommending him to the mercy of the court." In that case movant, in two grounds of the motion for new trial, complained that the language of the court limited the jury in the exercise of their right to recommend by the facts and circumstances of the case, and was equivalent to charging the jury that their right to recommend depended upon the facts and circumstances of the case, whereas under the law the right to recommend in any case is an arbitrary right and privilege of the jury without regard to the facts and circumstances.

This court said: " Such language did not circumscribe or restrict the
jury in respect to the exercise of their right of recommendation."
And further  said: " We think that the error. herein assigned on
these two grounds of the motion amounts to nothing, because the
issue of law made is settled by the case of *Inman* v. *The State,* 72
*Ga.* 269.   That case covers this.   The distinction taken there be-
tween that case and *Hill* v. *The State,* 72 *Ga.* 131, also exists here.
The case of *Johnson* v. *The State,* 58 *Ga.* 491, relied on so strongly
by the able counsel for plaintiff in error, is for the offence of cattle
stealing, and arose under a different statute in respect to the power
of the jury on the subject of punishment.   Moreover the charge in
that case confined the right of the jury in this, that the court
charged that if there were no circumstances to justify you in recom-
mending him to the mercy of the court, ' why then you ought not
to do it.'   Such a charge as that would be error under the statute
in respect to punishment for murder, because it said to the jury
that they ought not to recommend to mercy unless such and such
was proved."   The importance of the charge in that case was em-
phasized by the fact that after the jury had considered the case for
several hours they returned into court and stated that their trouble
in agreeing arose out of the difficulty in regard to the respective
powers of themselves and the court concerning the punishment;
and the court thereupon substantially repeated the charge to the
jury.   In regard to this repetition the court held that there was no
error.   Likewise in that case the judgment overruling the motion
for a new trial was affirmed, all of the Justices, three in number,
concurring.   In *Cyrus* v. *State,* 102 *Ga.* 616 (29 S. E. 917), the
court, in regard to the recommendation to life imprisonment,
charged as follows: " If you find the defendant guilty, it is in
your discretion whether you will recommend that he be imprisoned
for life.   You are not limited or circumscribed, and the law pro-
vides no rule for guidance."   And the court added: " If you think
this is a case in which you would be justified in recommending a
life imprisonment in the event of your finding the defendant
guilty, you have a right to make such recommendation, as it is
for you to say, in the event of your finding the defendant guilty,
whether the facts and circumstances in this case warrant you in
making such recommendation.   It is all a question for you under
the law and the evidence."   Here again the recommendation was

made to depend on whether or not the jury was " warranted " under the facts and circumstances of the case, and they were plainly informed by the court that it was a question " under the law and the evidence." This court said: " Following the cases of *Inman* v. *State,* 72 *Ga.* 269, and *Valentine* v. *State,* 77 *Ga.* 470, this court cannot hold it to be cause for a new trial that the judge " charged as above stated; and further: " As an open question, however, some of the language above quoted would be subject to serious criticism. It would in such cases be decidedly better to omit the use of the word ' justified ' and of the word ' warrant,' and to substitute in their stead language leaving the jury free to dispose of the question of recommending or not recommending life imprisonment, without any intimation from the bench as to what should control or influence them in reaching a conclusion upon this matter." Here the charge was criticised because the court had used language limiting the jury to a recommendation when it was justified; but the judgment overruling the motion for new trial was affirmed, all of the Justices, six in number, concurring. In *Hackett* v. *State,* 108 *Ga.* 40 (33 S. E. 842), the court charged as follows: " Now, upon the question of recommendation for mercy, that is a matter the law leaves entirely with you, and I give you this in charge: You may recommend if in your judgment you think you are justified in so doing. It is for you to say whether the facts — all the circumstances in the case warrant you in making such a recommendation; but you are not limited or circumscribed in any respect, and the law prescribes no rule for the exercise of your discretion. It is a matter entirely with you." Here the court informed the jury that it was all a matter for them, and that the law prescribed no rule for the exercise of their discretion. But at the same time they were distinctly informed that they " may recommend " if in their *"judgment"* they thought they were *" justified"* in so doing. And they were further told that they were to determine their recommendation from all the facts and circumstances, thus making their recommendation depend upon whether they were warranted and justified under the facts and circumstances of the case. Here again the language was criticised; but the judgment overruling the motion for a new trial was affirmed, all the Justices, six in number, concurring.

In *Thomas* v. *State,* 129 *Ga.* 419, 421 (59 S. E. 246), one ground

of the motion complained of the charge of the court on the right of the jury to recommend life imprisonment. The court stated the rule, and held that the charge complained of was not erroneous. It will serve no useful purpose to quote that charge, since it is widely different from that in the present case. The judgment, however, overruling the motion for a new trial was affirmed, all of the Justices, six in number, concurring. In *Hugle* v. *State,* 147 *Ga.* 35 (92 S. E. 646), exception was taken to the instruction to the jury in regard to recommendation of the defendant for life imprisonment. This court held that the charge was not erroneous, citing a number of the cases mentioned above, and affirming the judgment overruling the motion for a new trial, all of the Justices concurring.

The case of *Cohen* v. *State,* 116 *Ga.* 573 (42 S. E. 781), is urged as authority for the view that the court erred in the charge as complained of. In that case, after giving in charge the code section pertaining to that issue, the court further said: " That, you see, gentlemen, was intended to confer upon jurors the power, in cases where the circumstances soften the crime — where, in their judgment, they don't think the full penalty ought to be inflicted — to recommend that the defendant be punished by imprisonment in the penitentiary for life. It is for the jury to say whether they will make that recommendation or not in this case." This charge was held to be error. It will be observed that the court clearly limited the jury, in making a recommendation, to the question of whether or not " the circumstances soften the crime." Even if this case is contrary to the view expressed above, it is not controlling for two reasons. First, there are older cases holding the contrary; and in the second place, while the judgment was reversed, it was concurred in by four of the six Justices, one being absent and one not presiding.

We repeat, that in the present case the court plainly informed the jury that in deciding whether or not to make the recommendation they could consider " anything that you think ought to be considered as bearing upon the question of what punishment you should fix." Furthermore, while the jury was instructed that they were supposed to know what was to be done with reference to punishment, and what was the object of punishment, we do not think that a fair construction of this language could be held to

mean that the judge had reference to extreme punishment only.
Upon the other hand, it seems the more likely view that he had
reference to punishment, stern or more merciful, as the jury might
believe would better fulfill the object. There is no reason for say-
ing that the jury necessarily believed the judge meant only the
extreme view, when in fact the modern view of the object of punish-
ment would appear to be quite to the contrary. These jurors taken
from the common walks of life were more than likely to share the
common view.

The charge is also criticised on the ground that the court in-
structed the jury that they might consider circumstances of miti-
gation or palliation or circumstances of aggravation. It is difficult
to conceive how the accused could be harmed by the instruction that
they might look to circumstances of mitigation or palliation. It is
true that the facts of the case present no circumstances of miti-
gation or palliation, except the youth of the accused. Surely the
jury must have understood that the phrase, "circumstances of
mitigation or palliation," included the matter of the defendant's
age. The mere injection of the further words, "circumstances of
aggravation," affords no basis for a reversal of the judgment,
especially where it was immediately followed by the further words
that the jury might consider "anything that you think ought to
be considered as bearing upon the question of what punishment
you should fix." It may well be asked why the jury should not be
told that they might consider circumstances of aggravation? This
clearly is within their province, and no case has been found where
it has been held to be erroneous.

We are reminded that human life is involved. It is true that
the life of the accused is immediately and vitally affected. But
this must not and cannot obscure the further fact that the lives of
millions of peaceful and law-abiding citizens, engaged in the ef-
fort to earn an honest living for themselves and their dependents,
are menaced by gunmen and bandits intent upon unlawfully ob-
taining their own ends, although its result be bloodshed and the
making of widows and fatherless children. In the firm adminis-
tration of the law by the courts lies the only protection to society.
We confidently assert that no decision of this court can be cited
where the judgment of the trial court was reversed on a charge
containing language subject to so little criticism; and we are un-

willing to forsake the unbroken line of decisions by reversing this case. The language in the charge may be subject to some criticism; and it may well be said, as it has been so frequently said, that the trial court should have confined itself to the language of the statute in regard to the jury's making the recommendation for life imprisonment or not, with or without reason, depending only upon their own arbitrary will. While thus criticising the language of the charge, we conclude, as in all similar cases heretofore, that nevertheless the language of the charge affords no reason for the grant of a new trial.

11.. The evidence introduced by the State was to the effect that the defendant went to the jewelry store of Nat Kaiser & Co., in the city of Atlanta, on December 15, 1921, and asked to be permitted to examine a valuable diamond ring which was on display in a show-window; that when the same was passed across the counter to him he made a sudden dash for the door, but, before reaching it, was intercepted by I. C. Walker, a private detective, in ordinary civilian dress, who had been employed for the purpose of preventing loss to the jewelry company through robbery during the holiday season; that at the moment of contact between defendant and Walker a pistol was seen in the hand of the defendant; that three shots were fired by him, from the effects of one of which Walker died; that the defendant escaped, but in doing so fired several shots upon persons who endeavored to apprehend him, seriously wounding Graham West; and that he subsequently went by automobile to Chattanooga, Tenn., where the ring was pawned. He was arrested in Detroit, Mich., some three weeks after the commission of the crime. There was introduced in evidence a letter addressed to an Atlanta newspaper, sent by special delivery, postmarked Atlanta, Ga., Jan. 12, 1922, 7 p. m., reading as follows: " I wrote you a letter some time ago, and I don't think you received it, as it has not been published. I would like to say that I think Atlanta has a bunch of boneheads for detectives; they don't seem to be able to catch any body. I gave them several chances to get me, and they have failed so far. I went to the expense of sending them a telegram that cost me close to forty-five dollars including the money I wired for my girl friend, thanks to Mr. Belle Isle they got this message. I will try to repay him later for this favor. I believe Mr. Pool stated I was in hiding; well he is badly

mistaken, I am not in hiding and don't intend to be. About Buckley, I never saw him before the night he taken me to Chattanooga, he did not know I was the bandit, and what would any taxicab driver do if he had the chance of taking a passenger to Chattanooga? As for those other two fellows indicted in this case, I have never had the pleasure of meeting them. Have not the least idea who they are. I almost forgot Mr. West; sorry I had to shoot him, but he insisted on stopping me, and there was no other way out of it. I think he will mind his own business hereafter, which will be much better for him if he does. Thanking you in advance I remain, Yours very truly, ' The Peachtree Bandit.' "

The defendant introduced no evidence. In his statement to the jury, after detailing certain circumstances connected with his early life, he recited that a few months prior to the occurrence for which he was under indictment and on trial he had accepted the invitation of a cousin to visit the room of the latter at the Aragon hotel, and, after the cousin had shown him the amount of money he had, $140, and after spending the night in the room he left " during the early hours of the morning " with the money belonging to the cousin; that subsequently he robbed Davis & Freeman Co., of two diamond rings, which he sold; that a person who purchased one of the rings which he had procured from Davis & Freeman Co. suggested that he cut the glass of the front street window of Sanford jewelry store and get away with a lot of diamonds, and also that he go to a named department store and get away with a whole tray of diamonds, but that person was told by defendant that he would not perform the first and could not perform the latter suggestion; that something like an hour previously to the homicide for which he was on trial he drank half a pint of whisky, then went down to Kaiser's jewelry store, and asked to look at a small diamond ring — asked to look at a ring; " he showed me a small one, then he showed me a large one." Touching the homicide the following is the only thing said or offered by the accused as a defense to the charge of murder: " Well, as soon as I got the ring in my hand, I made a break for the door, and about that time, Mr. Walker grabbed hold of me, and that's the last thing I remember right there, when he taken hold of me, and I believe if I hadn't shot him he would have killed me right there on the spot; that's the last thing that I remember, when he taken

hold of me, and the next thing I remember is when I was in the haberdashery store on Pryor Street, buying a necktie." He then stated in detail his movements up to the time of his arrest. It will be observed from the foregoing statement in regard to the evidence that the verdict of guilty was amply justified. Indeed, a case is rarely encountered where there is so nearly no defense. The accused callously and of his own volition details a series of his crimes, including the thefts from his own kinsman who had hospitably received him as a guest for the night. After the homicide and before his arrest the accused wrote a letter to the Atlanta Constitution for publication, in which he complains of the interception of his telegram and of the loss of money occasioned thereby. With insolent bravado he repels the statement of the chief of the Atlanta detective department that the accused was in hiding, and says, "Well, he is badly mistaken, I am not in hiding and do not intend to be." It contained a threat directed to Mr. Belle Isle. With reference to the shooting of Mr. West, which nearly resulted in another death, he makes this statement: "I almost forgot Mr. West; sorry I had to shoot him, but he insisted on stopping me, and there was no other way out of it. I think he will mind his own business hereafter, which will be much better for him if he does." Except in this letter, where the regret for shooting Mr. West was obviously not unqualified, nowhere does he express regret or shame for the series of crimes which on the stand he detailed, and which finally culminated in the murder of Walker, for whose homicide he was on trial. He was pleased to style himself the "Peachtree Bandit." The accused stated: "Mr. Walker grabbed hold of me, and that's the last thing I remember right there." Then he states that "when he taken hold of me I believe if I had not shot him he would have killed me right there on the spot." Clearly this is an expression of an opinion formed after the homicide, and perhaps stated for the first time on the trial; otherwise the first statement that when Mr. Walker grabbed hold of him that was the last thing he remembered could not be true. The accused had formed a definite plan, and with such premeditation, heavily armed, had entered a jewelry store in a thickly congested retail district, had snatched a diamond ring valued at $2500, and was endeavoring to escape; and any person who saw the act had the legal right to resist and arrest the criminal, and had the right to use such force as was

necessary to effect the arrest. The accused, as a matter of law, was bound to anticipate that this lawless undertaking would meet with resistance, and the fact that he was resisted offers no justification whatever for the slaying by him of the deceased who undertook to arrest him. Detective agencies, as a rule, are recognized by municipalities and required to obtain a license before doing business. The detective who saw the crime committed, even as a private citizen, under those circumstances, stood substantially on the basis of an arresting officer. It is declared in the Penal Code (1910), § 921: "A private person may arrest an offender, if the offense is committed in his presence or within his immediate knowledge; and if the offense is a felony, and the offender is escaping, or attempting to escape, a private person may arrest him upon reasonable and probable grounds of suspicion." The instructions of the court to the jury were more favorable than the law required. The case was one of murder, and the court was not required to give in charge the law of voluntary manslaughter; but this law was submitted as an issue to the jury. No errors of law were committed, and the court did not err in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concur, except as to the rulings in headnotes 1 and 10, upon which the court is evenly divided in opinion, as there indicated.*

BECK, P. J., and ATKINSON, J. We dissent from the ruling made in the first headnote and the first division of the opinion. The movant submitted affidavits to sustain the ground of the alleged disqualification of certain jurors because of bias and prejudice, and these affidavits are properly in the record here for consideration by this court. The State insists that it met the evidence to show disqualification of the jurors, by the submission at the hearing of counter-affidavits, in which the material statements made in the affidavits adduced to show disqualification were controverted, thus making an issue as to the disqualification of the jurors; and that the judgment of the trial court as to this issue should not be disturbed, as there was no abuse of discretion. The ruling of the majority that this issue was one for decision by the judge would be sound, in our opinion, if we had in the record, properly certified, the counter-affidavits which are attached to this record; but under the ruling in the *Glover* case (*Glover* v. *State*,

DuPRE *v.* STATE.

128 *Ga.* 1), which has been followed, these affidavits can not be considered, inasmuch as they are not properly identified and certified nor made a part of the record. The fact that a formal answer was made by the solicitor-general for the State to the rule nisi can not have the effect of dispensing with the proper identification, certification, and order making the affidavits a part of the record. If the answer of the solicitor-general, with the affidavits attached as exhibits, had been approved or allowed by the court, it might have become a part of the record without a formal order to that effect; but the mere filing of what purports to be an answer, with certain affidavits attached, in the clerk's office three days after the motion for new trial was heard, was not sufficient, although "the counter-showing of the solicitor-general on the motion for new trial as amended, filed March 18, 1922," is specified in the bill of exceptions as a material part of the record, there being no order or entry by the judge to show that this counter-showing, with its exhibits, was identical with the one submitted to the judge. The clerk who made the entry of filing was not even present at the hearing of the motion, so that it could be handed to him for filing in the presence of the court. The rule prescribing how documents of vital importance like this are to be identified and made a part of the record is of uniform and universal application in criminal cases; and a failure to comply with the requirements as to identification and making the affidavits a part of the record prevents a consideration in this court of affidavits used in a counter-showing not properly brought up in the record. We do not think that these affidavits used in the counter-showing can be considered; and that being true, affidavits showing disqualification of certain of the jurors were not met and rebutted. FISH, C. J., concurs herein.

HINES, J. I dissent from the ruling of this court set out in the tenth headnote. The charge of the court is as follows: " You hear the evidence; you are citizens of this county; the jury is supposed to know what ought to be done with reference to fixing the punishment; the court has no suggestion to make to you with reference to that; you may consider what the object of punishment is, consider all the facts and circumstances of the case, circumstances of mitigation or palliation, or circumstances of aggravation, anything that you think ought to be considered as bearing upon the question of what punishment you shall fix." The Penal

Code, § 63, declares: "The punishment for persons convicted of murder shall be death, but may be confinement in the penitentiary for life in the following cases: If the jury trying the case shall so recommend, or if the conviction is founded solely on circumstantial testimony, the presiding judge may sentence to confinement in the penitentiary for life. In the former case it is not discretionary with the judge; in the latter it is."

But it may be said that similar instructions have been approved by this court. In *Inman* v. *State, 72 Ga.* 269, the charge complained of was this: "If you find him guilty, and the case be one in which you think you are justified in doing so, the facts and circumstances justify you in doing so, you can say in your verdict that 'we recommend that he be imprisoned in the penitentiary for life;' and upon that recommendation, it would be my duty to inflict that punishment upon him." Here the court did not call the attention of the jury to any particular facts and circumstances, but left the jury free to consider all the facts and circumstances of the case. Yet in that case this court held: "The better practice is for the court to call the attention of the jury to the law and merely state to them that, if they think proper, they may . . recommend that defendant be imprisoned in the penitentiary for life." For this better practice I am contending.

In *Valentine* v. *State, 77 Ga.* 470, the charge complained of was, "Then, if you convict him, it is for you to say whether the facts of the case, whether all the circumstances, warrant you in recommending him to the mercy of the court." In commenting on this charge this court held that such instruction will not require a new trial. Such language did not circumscribe or restrict the jury in respect to the exercise of their right of recommendation. The charge in that case left the jury free to consider "all the circumstances."

In *Cyrus* v. *State, 102 Ga.* 616, the charge complained of was this: "The punishment for persons convicted of murder shall be death, but shall be confinement in the penitentiary for life if the jury trying the case shall so recommend. If you find the defendant guilty, it is in your discretion whether you recommend that he be imprisoned for life. You are not limited or circumscribed, and the law provides no rule for [your] guidance. If you think this is a case in which you would be justified in recommending a life im-

prisonment in the event of your finding the defendant guilty, you have a right to make such recommendation, as it is for you to say, in the event of your finding the defendant guilty, whether the facts and circumstances in this case warrant you in making such recommendation. It is all a question for you under the law and evidence." In the charge in that case the court left the jury free to consider all the facts and circumstances of the case. He further instructed the jury that they were " not limited or circumscribed, and the law all the facts and circumstances of the case. He further instructed jury that it was all a question for them under the law and the evidence. The court held that this charge did not require the grant of a new trial, but said: " As an open question, however, some of the language above quoted would be subject to serious criticism. It would in such cases be decidedly better to omit the use of the word ' justified ' and of the word, 'warrant,' and to substitute in their stead language leaving the jury free to dispose of the question of recommending or not recommending life imprisonment, without any intimation from the bench as to what should control or influence them in reaching a conclusion upon this matter."

In *Hackett* v. *State,* 108 *Ga.* 40, the charge complained of was this: " Now, upon the question of recommendation for mercy, that is a matter the law leaves entirely with you, and I give you this in charge: You may recommend if in your judgment you think you are justified in so doing. It is for you to say whether the facts — all the circumstances in the case — warrant you in making such a recommendation; but you are not limited or circumscribed in any respect, and the law prescribes no rule for the exercise of your discretion. It is a matter entirely with you." This charge left the jury free to consider all the circumstances of the case; and they were further instructed that they were not limited or circumscribed in any respect, and that the law prescribed no rule for the exercise of their discretion. Yet, commenting on this charge, Judge Little, who delivered the opinion of the court, said: " So far as I am concerned, if it were an original proposition, I should not hesitate to pronounce this charge error and wholly unwarranted by the law. The quality of mercy is free. Whether it shall be exercised or not in a capital case is for the jury alone to determine, and the judge may not lawfully abridge this right by instructions which even in the slightest degree qualify its exercise. But I am bound by previous rulings of this court."

We submit that the charge in the *Hackett* case differs in most essential features from that in the case at bar.

In *Thomas* v. *State*, 129 *Ga.* 419 (6), the charge complained of was this: " It is within the province and power of the jury, if they should find the defendant guilty, and if they believe that it ought to be so done, or if they wish it so done, to recommend that he be punished by imprisonment in the penitentiary for life; there is no rule of law by which you are to be guided in making a recommendation of that character; it is entirely a matter for your determination." Here the jury were distinctly told that they could recommend merely if they wished it done, that there was no rule of law by which they were to be guided in making a recommendation of that character, and that it was a matter entirely for their determination. In dealing with that instruction this court said: " It is not open to the criticism that it was calculated to prejudice the jury, and prevent them from recommending that the prisoner be punished by imprisonment for life."

In *Elder* v. *State*, 143 *Ga.* 383, the instruction was: " But if you think for any reason there are extenuating circumstances which do not reduce it from murder to manslaughter, or justify it, but for any reason you think this man should not suffer the death penalty but should be imprisoned for life, you would express it in your verdict, and that would be the sentence of the court." Here the language " extenuating circumstances " referred solely to the question of the reduction of the homicide from murder to manslaughter, and did not refer in the slightest degree to the right of the jury to extend mercy, and to recommend imprisonment for life as the punishment of the defendant in that case. In that case the jury were expressly instructed that they could exercise this right if for any reason they thought that the defendant should not suffer the death penalty. The charge in that case was very different from the charge in the instant case.

In *Hugle* v. *State*, 147 *Ga.* 35, the charge was this: " If you find the defendant guilty, the form of your verdict would be, ' We, the jury, find the defendant, Frank Hugle, guilty.' If you stop there, the law attaches to that verdict the death penalty. But if for any reason you think the man should not be hung, you can add to your verdict, ' and that he be imprisoned for life in the penitentiary.' " Here the jury was left entirely free to recommend

that the defendant be punished by imprisonment in the penitentiary for life, for any reason whatever. Clearly such a charge did not restrict, limit, or circumscribe the right of the jury in this matter.

But in the charge complained of the court nowhere instructed the jury that they could for any reason recommend the defendant. He nowhere intimated to them that their right in this matter was unlimited and unrestricted. He did not tell them that they could recommend the defendant with or without reason. He did not instruct the jury that they could recommend him solely because they wished to do so. The trial judge did not confine himself to the language of the Penal Code. He instructed them that they were supposed to know what ought to be done with reference to fixing the punishment. It is true that he instructed them that he had no suggestion to make with reference to that. Yet, right on the heel of this statement, he told the jury that they might consider what the object of punishment is. Here the suggestion is made that one of the rules by which a jury is to be guided in making a recommendation on this subject is the consideration of the object of punishment, and at once there might have flashed into the mind of the jury that the object of punishment is to require "an eye for an eye, a tooth for a tooth, a life for a life." This is the common conception of the layman as to the object of punishment. It is true that the court instructed the jury that they could consider " all the facts and circumstances of the case," but followed this with the immediate qualification of " circumstances of mitigation or palliation, or circumstances of aggravation." Here was a suggestion and plain intimation by the court that the jury, in determining whether they would exercise mercy or not, should consider circumstances of mitigation or palliation on the one hand, or circumstances of aggravation on the other hand. Here the court erected a signpost for the guidance of the jury in reaching a conclusion upon this subject. In effect, by strong intimation, the court told the jury that circumstances of palliation or aggravation should be considered by them, in deciding whether they would take the life of this youthful malefactor, or punish him by imprisonment in the penitentiary for the remainder of his life. In my opinion this charge was error.

Under our statute cattle-stealing is a felony, and is punishable

by confinement in the penitentiary unless the jury recommend the prisoner to mercy, in which event the convicted defendant is punishable by a fine, imprisonment in the common jail, or labor on the chaingang. In dealing with the right of the jury to recomment mercy in the case of cattle-stealing this court in *Johnson* v. *State, 58 Ga.* 491, said: "This right is not restricted in the Code to cases of mitigating circumstances, or other particular facts of any given case, but is at the free disposal of the jury in any case of cattle-stealing whatever. The law not limiting this free grant of mercy in the jury, the court should not limit it in charging the law thereon." If this is the rule in cases of larceny of cattle, where failure to recommend only subjects the defendant to imprisonment in the penitentiary from two to four years, there is much greater reason for applying it in a case where human life is at stake.

In *Hill* v. *State, 72 Ga.* 131, this court applied this rule and said: "The Code leaves it in the discretion of the jury as to whether they will recommend imprisonment for life in the penitentiary of a person convicted of murder; they are not limited or circumscribed in any respect whatever; nor does the law prescribe any rule by which the jury may or ought to exercise this discretion. Therefore a charge that the jury, in considering the question of recommending to mercy, should not be governed by their sympathies, but by their judgments, approved by the evidence in the case and the law applicable to it, was error." In that case this court further said: "This law does not prescribe any rule by which the jury may or ought to exercise this great discretion; it does not say that the jury are not to be governed by their sympathies, and that they are to be governed by their judgment, as instructed by the court below. The court below imposed, by its charge, restrictions upon the jury unauthorized and unwarranted by the statute." The court cited for this ruling the case of *Johnson* v. *State,* supra.

This being, as far as my hasty research reveals, the oldest case in the books upon this subject, I feel bound by it, whether or not there is anything to the contrary in later rulings of this court; but I have attempted to show, in the above review of later cases, that there is a wide difference between the charge therein considered and the charge given in the case at bar.

In *Cohen* v. *State,* 116 *Ga.* 573, this court said: "Whether they will so recommend or not is a matter solely in their discretion, which is not limited or confined in any case. Accordingly, where the jury were instructed that they had such right, full and untrammelled, but in the same connection they were also instructed that the law allows such recommendation in cases where they think there are circumstances of mitigation, and in cases where the circumstances soften the crime, and where in their judgment they do not think the death penalty ought to be inflicted, a verdict of guilty without a recommendation must be set aside, because it is possible that the jury may not have fully understood the extent of their power as defined by the law."

Judge Atkinson has well said, in the case of *Lucas* v. *State,* 146 *Ga.* 315, which was repeated in *Bull* v. *State,* 150 *Ga.* 308: "It thus appears from the statute, and the decisions of this court applying it, that in all cases of conviction for murder, whether or not the jury would recommend a life imprisonment is within the discretion of the jury. They may do so with or without a reason, and they may decline to do so with or without a reason. They may do so as a matter of public policy, or out of mere sympathy for the prisoner, or they may decline to do so for reasons of public policy, or on account of absence of sympathy for the accused. The question of recommendation has nothing to do with the issue as to guilt or innocence of the accused. The granting of it in cases of conviction is mere matter of grace that comes after guilt is established."

For the reason that I think the charge of the court on this subject did not fully and fairly present the law to the jury, and as the jury may have been led to believe by the charge given that they could only exercise this right in cases where there were circumstances of mitigation or palliation, and that they should refuse it in cases of aggravation, I feel constrained to dissent from the judgment of the majority of this court in which its sanction and approval are put upon the charge complained of. In a case in which human life is involved, and in which human life is taken, the defendant should be afforded every right given him under the law, to the fullest and clearest extent, on a vital issue in the case. I am authorized to say that Chief Justice Fish and Justice Atkinson concur in this dissent.