## CRAWFORD *v.* THE STATE.

1. The State so far supported by evidence its theory of a conspiracy between the accused and another to murder the deceased that the court was warranted in submitting this theory to the jury and instructing them as to the law relating to conspiracy.

2. Neither under the evidence nor the prisoner's statement was the killing voluntary manslaughter; and, in the absence of an appropriate written

request by the accused, it was not incumbent upon the court to amplify the instructions given to the jury upon the theory of self-defense, which was only presented by his statement, the evidence making out a case of murder.

Submitted June 20,—Decided July 3, 1906.

Indictment for murder. Before Judge Parker. Charlton superior court. May 5, 1906.

*A. E. Cochran,* for plaintiff in error. *John C. Hart, attorney-general,* and *John W. Bennett, solicitor-general,* contra.

EVANS, J. The plaintiff in error, Julius Crawford, was indicted for the murder of T. P. Robinson, and upon the trial of the case the jury returned a verdict of guilty, without recommendation to mercy. The evidence introduced by the State tended to establish the following facts leading up to and connected with the homicide, which the accused, both before and at the trial, admitted had been committed by him: The deceased was the town marshal of Winoker, in Charlton county. About sundown, on March 14, 1906, the marshal arrested a negro named Bob Caruthers over the protest of Tobe Powell, who asserted that Caruthers had been doing nothing except "sitting down asleep." The marshal cursed Powell for his interference, and carried Caruthers off and placed him in jail. About dark, Powell left home, after stating to his wife that "he wanted satisfaction in regards to Mr. Robinson cursing him on a wrongful occasion." Some two hours later, Powell returned to his home, procured his gun, and left again. Later in the night, Powell, accompanied by the accused, called at a restaurant for supper. Both were armed with guns. In a few minutes another negro, Ike Mickler, came into the restaurant, and the three shortly thereafter left together, going in the direction of the depot. Some thirty minutes later, fifteen or twenty shots were fired in rapid succession in the neighborhood of the depot. The town marshal, who was at that time at a house about one hundred yards from where these shots were fired, left this house to investigate the matter. In a few minutes, his brother, upon being informed of his purpose, followed him. The shooting first heard had ceased, but was shortly followed by several other shots. The brother of the deceased had gotten within fifty yards of him when the shot which killed him was fired; he did not immediately fall, and his brother approached to within ten steps of him before he fell. The deceased, being then

unable to speak, made no reply to questions put to him by his brother. Within fifteen or twenty steps from the place where the deceased fell, Tobe Powell was found dead, lying across his gun. After the arrest of the accused and while he was confined in jail, he voluntarily made a statement to the effect that he, Tobe Powell, and Ike Mickler were together at the scene of the homicide; that after he had stopped at a closet, he overtook his companions, and they "come up with Roberson" and Tobe began shooting at him; that the marshal continued to advance, and Tobe, who was somewhere about a hog-pen, "raised up," and the marshal killed him; and that at this juncture, the accused fired on the marshal, who went staggering off and fell, and the accused then wheeled and ran. The accused also stated that "when Roberson shot Tobe down, he expected that he would shoot him next;" and when asked if there was any hard feeling between himself and Roberson, replied that there was "nothing in the world between them." In his statement to the jury, the accused insisted that on his way going home he overtook Powell and Mickler; that he went into a closet, and when he came out he started to again join them and was within twenty or thirty steps of them when the shooting occurred; that "this man shot down this other man," and it frightened him (the accused), and he shot his gun, fearing that the marshal might shoot him down next. The accused denied any ill will towards the deceased, and sought to justify the killing on the ground that he feared the marshal would kill him unless prevented from doing so.

1. The theory of the State was that the accused had entered into a conspiracy with Powell, who was shown to have had a grievance against the deceased, to decoy the marshal to a secluded place near the depot for the purpose of doing him violence, and that they sought to carry this project into effect by first arming themselves, waiting till a late hour in the night, and then going to the scene of the homicide and discharging their guns a number of times so as to attract the attention of the marshal and cause him to come there to investigate the disturbance. The trial judge submitted this theory to the jury and instructed them as to the law bearing on the subject of conspiracy. The contention of the plaintiff in error is that there was not sufficient evidence to warrant an instruction to the jury upon the law relating to conspiracy, and that the charge given upon this branch of the case, while correct in the abstract, amounted to

an intimation that there was evidence of such a conspiracy between the accused and Powell. We can not agree to this proposition. The accused offered no explanation as to his being armed with a gun; and there was evidence to show that he had, an hour or more before the homicide, armed himself and joined the company of Powell, who had expressed an intention to secure satisfaction for his grievance against the marshal, and had, after leaving his home about dark, returned for the purpose of getting his gun and was carrying it when he and the accused were first seen together prior to the homicide. They went together towards the depot just before the marshal's attention was attracted by the continuous and rapid shooting in that direction; yet the accused did not undertake to deny that this unusual disturbance occurred or insist that he did not participate therein. The circumstances were such as to justify the inference that the purpose of Powell and his companions was to lure the marshal down to the place where the shooting occurred, in order that Powell might reap his revenge for his grievance against the marshal; and it was for the jury to say what was the truth in this regard. The evidence, though in part circumstantial, supported the theory of conspiracy relied on by the State.

2. The accused can not justly complain that the court failed to instruct the jury as to the law of voluntary manslaughter, since a conviction thereof could not have been lawfully based either upon the evidence or upon his statement. The theory of hot blood was in no way presented. The trial judge of his own motion instructed the jury that should they believe the accused was not acting in concert with Powell, but was a mere bystander, and that the marshal made some demonstration towards the accused such as to induce him to believe that his life was in danger, and he shot the deceased under those circumstances, then the killing of the deceased would be justified. This instruction presented to the jury the most favorable view of the defendant's somewhat equivocal and confused statement, and gave to him the full benefit of the defense that he shot the deceased under the fears of a reasonable man that his life was in danger. Complaint is nevertheless made that the court failed to give in charge section 70 of the Penal Code, which defines justifiable homicide, or section 71, which declares under what circumstances the defense of reasonable fears may be interposed. In the absence of an appropriate written request to amplify the in-

structions given with regard to the law of self-defense, it was not incumbent on the court to more fully present this theory of the homicide, since it depended, not upon any evidence affording a basis therefor, but solely upon the prisoner's unsworn statement. *Rentfrow* v. *State,* 123 *Ga.* 541-542. As the trial judge correctly informed the jury, there could properly be no intermediate verdict between one of guilty of the crime charged in the indictment and one of not guilty; and the evidence was such, we·think, that the conviction of murder should be allowed to stand. The last two grounds of the defendant's motion for a new trial were not insisted upon before this court, being palpably without merit; and for none of the other reasons assigned in the motion should the judgment of the court below be set aside and another trial ordered.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*