## 2492. WILBURN *v.* THE STATE.

1. The verdict was supported by the evidence. Nor was there a fatal or even a material variance between the allegations of the indictment and the proof. Proof of the sale of corn liquor is sufficient to support an allegation that the defendant unlawfully sold alcoholic, spirituous, malt, and intoxicating liquor.

2. The word "liquor" is collective, and its significance includes the plural as well as the singular. A conviction may be supported by proof of the sale of liquor which is either alcoholic, spirituous, malt, or intoxicating in its quality, without proof of the fact that it possesses more

than one of these qualities. In the absence of any evidence to the contrary, "corn liquor" will be presumed to be an intoxicating liquor.

3. While it is true that where the sale of intoxicating liquor is alleged to have been made by an individual, the proof must correspond in this respect with the allegation, nevertheless evidence that another person furnished part of the money with which the intoxicating liquor in this case was paid for did not create any variance between the allegation and the proof; for the reason that the jury were authorized to infer that if any money was furnished by a person other than the alleged buyer, it might have been a loan of money; and for the further reason that there was no evidence tending to show that the seller had any knowledge of the participation of any other person than the alleged buyer, or that any other than he participated in the actual purchase.

DECIDED JULY 5, 1910.

Accusation of sale of liquor; from city court of Monticello—Judge Thurman. January 19, 1910.

*Eugene M. Baynes,* for plaintiff in error.

*Greene F. Johnson, solicitor,* contra.

RUSSELL, J. The defendant in the court below was convicted of the offense of misdemeanor. In the presentment it was charged that he had sold and bartered, for valuable consideration, alcoholic, spirituous, malt, and intoxicating liquor to Croff Brewer. The sale was alleged to have taken place on the 15th of December, 1908, and the presentment was returned to the August term, 1909, of Jasper superior court. The case was transferred to the city court of Monticello for trial; and it is insisted that the judge of the city court erred in overruling the motion for new trial. Special assignments of error complained that the court erred in stating to the jury the contentions of the State, in that he did not limit the time to which the evidence of the alleged sale should be confined, nor limit the inquiry to the person to whom the liquor was sold, and particularly that the instructions of the judge made it appear to the jury that the indictment charged the sale of different kinds of liquors; whereas the indictment charged the sale of only one kind of liquor, to wit, alcoholic, spirituous, malt, and intoxicating liquor. Exception is also taken to the charge of the judge upon the subject of reasonable doubt, wherein the judge told the jury that "a reasonable doubt is just what the words themselves mean, —a reasonable doubt,—a doubt that grows out of the testimony, or out of the want of testimony." It is contended that this was error because doubt might arise not merely from testimony, or

want of testimony, but from the defendant's statement, which the judge failed to refer to, and that what the judge said upon the subject limited sections 986, 987 of the Penal Code, to the prejudice of the defendant. It is also insisted that the court erred in charging that the jury would be authorized to convict in case they should find and believe that the defendant sold any of the liquors named in the indictment. There is no merit in the exceptions to the charge upon reasonable doubt. The succinct definition given by the trial judge was much less apt to confuse the jury than a labored attempt to elaborate a term which is more easily understood when considered from the standpoint of its ordinary significance in the everyday affairs of life.

Treating all the other exceptions together, they really raise but two points for our consideration, or rather the single point that there was a fatal variance between the allegation of the presentment and the proof submitted in its support, and that this variance existed as to two material matters necessary to be established. It is contended that the instructions to which exceptions are taken were not authorized, because not in harmony with the evidence, when considered with a view. to its applicability to the presentment. For instance, it is insisted that the verdict is contrary to evidence, and also that the judge erred in charging the jury that if they found any of the liquors were sold to Croff Brewer, as alleged in the indictment, the jury would be authorized to convict, and that the evidence shows that the sale was not made to Croff Brewer alone, as alleged in the presentment, but to Croff Brewer jointly with Phenie Benton. Upon this subject it is only necessary to say that the record shows that Phenie Benton testified that she never bought any intoxicating liquor from the defendant, and Croff Brewer testified that he purchased the liquor in question, and that he himself handed over the money with which to pay for it. It is true he also testified that Phenie helped him to pay for it, he contributing 25 cents and Phenie 10 cents, but he does not testify that Phenie participated in the purchase. Though Phenie may have loaned him 10 cents of the money, or may have contributed 10 cents to the purchase-price, this does not prevent Croff Brewer from being the sole purchaser. So far as the defendant is concerned, the sale was made by the defendant to Croff Brewer without any knowledge of Phenie Benton's interest in the matter.

Certainly there is no evidence tending to show that Phenie did more than furnish a part of the money, and none to show that she personally participated in the direct purchase. It is insisted that there is a fatal variance between the allegation of the presentment and the proof, in that the only evidence tending to show that the liquor purchased was alcoholic, spirituous, malt, or intoxicating was that of the State's witness, who testified that he bought corn liquor from the defendant. We think this was sufficient, in the absence of anything to the contrary, to authorize the inference on the part of the jury that the liquor sold was corn whisky and intoxicating. Considering the nature of the case being tried, as well as the ordinary acceptation of the term "corn liquor," it would hardly be reasonable to assume that the jury could have inferred that the witness meant anything else than corn whisky when he stated he bought "corn liquor." In *Carswell v. State,* 7 *Ga. App.* 198 (66 S. E. 488), this court held that the testimony of the witness to the effect that he bought "liquor" from the defendant was sufficient to authorize the inference, in the absence of any testimony to the contrary, that the liquor in question was intoxicating; and in the present case, while recognizing the fact that the word "liquor" has a generic as well as a specific meaning, we are compelled to hold that as there is nothing to show that the liquor alleged to have been sold was blood or buttermilk, or other non-intoxicating liquid, the stating of the case was such as to attach to the word "liquor" its specific meaning, and in this sense it refers only to intoxicants. It was insisted that inasmuch as the accusation alleged the sale of "liquor," instead of "liquors," the charge could only refer to one kind of liquor, and, therefore, that the conviction was not authorized, unless the proof showed that the liquor sold possessed all the qualities ascribed to it in the presentment,—that is, that it must have appeared that the liquor sold was alcoholic, and also that it was spirituous, and malt, and intoxicating. If the word "liquor" could only refer to a single liquid, the point might be well taken. But it must be borne in mind that the word "liquor" is collective in its significance, and may include in its broader meaning any number of liquids. It includes the plural as well as the singular, and, for that reason, to charge that one has sold alcoholic, spirituous, malt, and intoxicating liquor is to charge that he has sold "liquor" of each of these kinds. If we are cor-

rect in this view, then, under the ruling in *Eaves* v. *State,* 113 *Ga.* 749 (39 S. E. 318), and *Hubbard* v. *State,* 123 *Ga.* 17 (51 S. E. 11), proof of the sale of liquor of any one of the kinds described would be sufficient to authorize the conviction. It certainly can not be said that if the indictment had charged that the defendant sold an intoxicating "liquor," the indictment would be defective; for the code requires that the statute shall be so ·interpreted as that the singular shall include the plural, and vice versa. And though the word "liquors" is employed in the general prohibition law of 1907, certainly an indictment can not be held to be defective which charges the sale of a certain intoxicating liquor as such (using the singular number in the charge), instead of using the exact phraseology of the statute. If an indictment charging that the defendant sold an intoxicating liquor would be good, and would be supported by proof that the defendant sold corn liquor, then, under the ruling in the *Eaves* and *Hubbard* cases, supra, in a case in which the defendant was charged with the sale of alcoholic liquor, and spirituous liquor, and malt liquor, and intoxicating liquor, proof of the sale of any one of these liquors would authorize a conviction.                    *Judgment affirmed.*