McKEE *v.* THE STATE.

No. 8333.  JANUARY 14, 1932.

*E. M. Smith, C. H. Griffin,* and *Scott Candler,* for plaintiff in error.

*George M. Napier, attorney-general, Frank B. Willingham, solicitor-general,* and *T. R. Gress, assistant attorney-general,* and *E. L. Reagan,* contra.

ATKINSON, J.  The exception is to a judgment refusing S. L. McKee a new trial after his conviction for murder of W. R. Ward by shooting him with a pistol.  The homicide occurred about 9 o'clock in the morning of July 25, 1930, in the recently planted field of Mrs. D. A. Puckett, the sister of the defendant, with whom he lived, which adjoined the corn-field of the deceased, on the latter's land.  The two fields were divided by a "turnrow" along which a wire fence had recently been constructed.  The dwelling of the deceased was about two hundred yards from the dividing line, and the rencounter ended in Mrs. Puckett's cotton-field about

seventy feet from the line. The corn was about knee high, and did not entirely obscure the view from the dwelling of the deceased. There were no eye-witnesses immediately at the scene of the rencounter. The deceased was barefooted and wore only a pair of "overalls" and a shirt. Two shots took effect, one in the body and the other in the legs, from which, after a time, death ensued. Other facts will sufficiently appear in the course of this opinion.

■ The seventh ground of the motion for a new trial complains: "The defendant offered in evidence certain rocks which he insisted the deceased Ward had and was endeavoring to strike him with; said rocks being found at the point at which defendant insisted the encounter took place, and at the point where defendant insisted to save his life from the use of said rocks by the deceased it was necessary for him to shoot, and that he did shoot whilst deceased was endeavoring to kill him, and that believing that the deceased was assaulting him with weapons, namely rocks, he fired the fatal shot. The court ruled out of evidence and would not permit the introduction and putting in evidence of said rocks. Movant insists that this ruling of the court is manifestly error; he insists that acting under the fears of a reasonable man and to prevent the felonious assault being made upon him by the deceased with said rocks it was necessary for him to kill to save his own life; he insists that the ruling out of said rocks ruled out his defense of self-defense; that said rocks being found, as shown by the testimony, at the place, the scene of the killing, soon thereafter, and identified as the evidence shows, should have been admitted in evidence, first as a proven fact, and second, as a circumstance supporting the theory of the defendant that he was being assaulted with weapons likely to produce death; and upon this ground movant insists that said verdict should be set aside and a new trial granted." The judge approved this ground, subject to the following note: "At the conclusion of defendant's statement counsel for the defense offered certain rocks in evidence, to the admission of which counsel for the State objected on the ground that the same had not been identified so as to be admissible, to which the court replied: 'I do not understand that there is any identification of these rocks by any evidence in the case,' to which E. M. Smith, Esq., counsel for defense replied: 'Mr. Puckett testified that he picked them up soon thereafter in the circle where the difficulty occurred,' to which the

court replied: 'It has not been proved that the rocks were used by either of the parties in this encounter. I sustain the objections and exclude the rocks.'"

The wife of the deceased testified: "I was in my house. . . When I heard those shots . . I ran up there. I saw Sam McKee there and my husband; no one else. They were tussling on the ground on Sam McKee's side of the line. . . When I got through the corn to where I could see them, Sam McKee got up. My husband got up and fell back again."

D. A. Puckett testified: "The rocks that witness held came from out the wallow place right where they had the fight. The flint rocks came from down on Mr. Ward's side. I saw the track Mr. Ward made in going from my line to McKee. It came from the pile of rocks just like these. The rocks were picked up in the circle where the difficulty occurred. Mr. McKee is my brother-in-law. I went up to the place where the difficulty occurred, about fifteen minutes after they moved Mr. Ward away." The witness testified further, on cross-examination: "The character of the land up there in my field along the line between Ward and myself is kinder gray land, tolerably level upland, and right even with it on his side is all the same grade. There is no decided ledge between us. As to its being the same kind of rock, right about where mine hits his, it is the same character; but these rocks were got out of a place I took in that had been lying out for years. Nobody took it in, because it was regular rock bed, and these were flint rocks I swore about. None of them were on my side at all. These two were on my side when I found them, but I don't know who put them over there, and there wasn't any other rocks around there; there was other rocks off a piece from there up on the hill, sorter like them; when you get a way back side of my pasture over there, there are some flint rocks. Yes, there are both kinds of rock over there at the pasture about thirty yards away. Down to where I said that pile of flint rocks on his place, it is 200 yards. Right down below where this encounter took place there is a terrace and there is peach trees on the line. That terrace is not composed largely of rock, and there is none of that kind of rock on the terrace, and if there is any rock on it I don't know it. It is lower on the Ward side, and I put a whole lot of trash and stuff in that, but I did not put any rock in there. I never put any rock in.

Rock could have been put there by others, but I never saw them, and I have lived there twenty-five years. I continually plow up rock where I thought there was none; every farmer does that. The field where this happened was sowed in peas and syrup cane. They were up there, some of them as high as your hand, had been sowed a week or ten days."

The defendant stated before the jury (referring to deceased): "He was barefooted, and his overalls were rolled up about half way to his knees. . . He had on a loose pair of overalls, and each of his overall pockets had a rock in them. He threw two rocks at me. They went west of me, and just a little about even with my head. I was surprised. . . He had gotten as close as 15 or 20 feet to me, when he reached in his pocket and got other rocks. I said if you will give me a chance I will go down to the house. . . I was struck on the head right side above the ear, with a rock in his hand, or thrown at close range. . . Robert had struck me and knocked me down and had gotten between me and Mr. Puckett's home. As I rose up and got on my knees, he was in front of me, east of me, with a rock in his right hand. Mr. Ward said, 'I will kill you, you will never get home,' and started toward me with the rock. When he started toward me with the rock, I took a pistol from my pocket and shot three or four times at rapid fire." The circumstances thus related would have authorized the jury to find that the rocks offered in evidence were used by the deceased in attacking the defendant. Their size and character were material, in connection with the prisoner's statement and other evidence in the case, on the question of constituting weapons likely to produce death, and of a felonious assault upon the defendant at the time of firing the fatal shot. It was erroneous therefore to reject the rocks from evidence.

■ The first special ground of the motion for a new trial complains: "Movant insists that the court erred in the following charge to the jury, to wit: 'What is meant by reasonable doubt, gentlemen of the jury, is what the words ordinarily imply in their usual signification, that is to say such a doubt as might arise in the mind of an honest, conscientious juror, who is seeking to determine the truth of the case, either because of the want of evidence or because of the evidence itself introduced in the case.' It is insisted that this charge did not go far enough; the court's failure to

124

charge the jury on the question of reasonable doubt that such a doubt might arise in the minds of the jury in the consideration of the statement of the defendant, whereas no reference to the defendant's statement is given by the court in this connection, and movant insists that the failure of the court to charge the jury on the subject of the statement in this connection is error," etc. In other portions of the charge the judge instructed the jury: "The defendant has made his statement, which he has the right to do, in his own defense. The statement is not under oath, he is not subject to cross-examination, and the jury will give his statement just such weight and credit as they think it is entitled to receive; and the jury may believe the statement of the defendant in preference to the sworn testimony in the case, either in whole or in part, if the jury believes that the statement is true. If the jury does not believe that the statement is true, it is the duty of the jury to reject the defendant's statement. As I have stated to you, you are the sole judges of the credibility of the witnesses in the case. You are also the sole judges of the facts in the case. You are the judges of the law in the case to the extent that you take the rules of law given you in charge by the court and apply them to the facts and circumstances in the case, including the defendant's statement." The charge excepted to, considered in connection with the general charge, was not erroneous for the reason assigned. If the defendant desired further instruction based on the defendant's statement not under oath before the jury, there should have been an appropriate request.

■ The second, third, fourth, fifth, sixth, and eighth special grounds of the motion for a new trial follow: (2) "Movant insists that the following charge of the court is error, to wit: 'The defendant, as I have stated to you, pleads not guilty to this charge, and the defendant contends that while he did shoot the pistol that killed Mr. Ward he did so under principles of justification and mitigation, and that under those principles of justification that he defended himself against a felonious assault made by Mr. Ward upon him with rocks and under threats of death as made by Mr. Ward against his life.' He insists that this charge was error in that the court failed to charge the jury what would constitute 'a felonious assault,' and leaves the jury to determine what act or acts on the part of the deceased Ward would constitute a felony. Mov-

ant insists that this is error for the reason that said charge did not go far enough, and left the jury to determine what would constitute a felonious assault." (3) "Movant insists that the following charge of the court is error, to wit: 'What is meant by a felony, gentlemen of the jury, is a crime which is punishable by imprisonment in the penitentiary for a term of years.' This charge movant insists is error, and a new trial should be granted him in said case for the reason that the court failed to define and tell the jury what acts would constitute or make a felony, and leaves the jury to guess and determine for themselves what act or acts would constitute a felony." (4) "Because the court erred in the following charge to the jury to wit: 'The defendant contends in this case, gentlemen of the jury, that at the time that he shot Mr. Ward that he had been feloniously attacked or assaulted by Mr. Ward, and that his life was in danger at that time, and that when he did shoot he shot as a resonable man in apprehension of his own life being taken by such a felonious assault.' This was an effort on the part of the court to state the contention or contentions of the defendant, in which the court instructed the jury that the defendant contended that he had been feloniously assaulted. The court failed to instruct the jury as to what would constitute a felonious assault, and leaves the jury to determine, in the absence of any instruction, what act or acts would constitute felonious assault upon the defendant. Movant insists that this failure of the court to charge the jury was error, for the reason that it leaves the jury to determine what would constitute a felonious assault." (5) "The court charged the jury as follows: 'I charge you, gentlemen of the jury, that the necessity for the killing, under the provisions of this section of the Code which I have just read to you, need not actually exist in order to justify the killing. The real question in the case is, did the defendant kill the deceased merely because of a bare fear that the deceased, at the time of the shooting, manifestly intended or endeavored, by violence or surprise, to commit a felony on his person, or were the circumstances under which the defendant killed the deceased sufficient to excite the fears of the defendant as a reasonable man that the deceased, under all the circumstances of the killing, intended or was endeavoring, by violence or surprise, to commit a felony on his person, and whether or not the defendant, in consequence of such fears, and not in a spirit of revenge, killed the

deceased.' Movant insists that this charge was error, in that the court failed to define and instruct the jury as to what act or acts would constitute a felony, and leaves the jury to determine this question of law; and he insists that the court should have instructed the jury as to what act or acts would constitute a felony." (6) "Movant insists the court erred in the following charge to the jury, to wit: 'If he did not act as a reasonable man, and did not honestly believe, as a reasonable man, that the killing of the deceased was necessary, under all the circumstances, to prevent the deceased from committing a felony on his person, then the killing was murder.' Movant insists that this charge was error, in that the court failed to advise and instruct the jury as to what act or acts would constitute a felony, leaving the jury in the dark as to what would justify the killing of the deceased Ward." (8) "On the trial of this case the court charged the jury that a felony is a crime punishable by imprisonment in the penitentiary for a term of years. Nowhere in said charge did the court instruct the jury as to what act or acts would constitute a felony. He did not tell the jury that if the deceased was assaulting the defendant with rocks or other weapons likely to produce death, that this could constitute a felony within the meaning of the law. Movant insists that the failure of the court, in the absence of a request, to define and instruct the jury as to what constituted and what acts would constitute a felony is error."

It was essential for the court to define the term "felony" which has a technical meaning. *Roberts* v. *State,* 114 *Ga.* 450 (40 S. E. 297). A proper definition was stated in the charge quoted in ground number 3. If further instructions applying that principle concretely to the case were desired, there should have been an appropriate request. None of these grounds of the motion for a new trial was meritorious.

■ The ninth ground is as follows: "Movant insists that he has not had a fair and impartial trial; he insists that he has not had a constitutional trial, for at the inception and beginning of the trial it was requested that the witnesses be sequestered and examined without the hearing of each other; it was agreed that the widow of the deceased, who was an important witness for the prosecution, remain in the court-room, whereupon the solicitor requested that one W. A. Ward, a cousin of the deceased, be permitted to re-

main and assist him in the conduct of the case. This was objected to, and the solicitor then stated that he would not use Mr. Ward as a witness; but later, over objection of counsel for movant, the court permitted said witness W. A. Ward to testify in the case. Movant insists that this ruling and judgment was harmful to him. He insists that it deprived him of a legal right to have the witnesses examined without the hearing of each other, and he assigns this ruling of the court as error." To this ground the court attached the following note: "Before the trial was begun, counsel for the defense requested the separation of the witnesses; whereon the solicitor-general requested that W. A. Ward, a cousin of the deceased, be allowed to remain in the court-room to assist State's counsel, as the said Ward had assisted in the preparation of the case for trial, which the court granted; whereupon E. M. Smith, Esq., counsel for the defense, requested that John McKee, a brother of the defendant, be also allowed to remain in the court-room and assist counsel for the defendant, which the court also granted." It was within the discretion of the judge to allow the witness Ward to remain in court and also to testify.

■ The tenth ground is as follows: "While the witness Doris Ward was on the stand, testifying on behalf of the State, the mother, Mrs. Robert Ward, sitting in plain view, movant insists, answered practically every question propounded to said Doris Ward, by the shaking and nodding of her head. When it appeared that the answer should be 'yes,' said Mrs. Ward nodded. When it was best for the prosecution for the witness to answer 'no,' said Mrs. Ward would shake her head. This happened and was carried on during the progress and examination of this witness until the court's attention was called to the fact that this conduct between mother and child was going on, when the solicitor-general stated that the mother said she was doing this unconsciously. Movant insists that the court erred in failing and refusing to reprimand and caution said zealous mother to desist, and his failure so to do movant insists was error hurtful and harmful to him." To this ground the court appended the following note: "While the witness Doris Ward was testifying as a witness for the State, C. H. Griffin, Esq., of counsel for the defense, called the attention of the court to what he construed as promptings of the witness by the mother of the witness, by the use of gestures of the head. No such

128

prompting had been perceived by the court, but the court promptly cautioned the mother of the witness not to prompt or in any manner attempt to influence the testimony of her daughter, to which Mrs. W. R. Ward, the witness's mother, replied that she had not done so, and would not do so." There is no merit in this ground.

■ The eleventh and twelfth grounds relate to alleged newly discovered evidence of G. W. Riley. The State introduced evidence in rebuttal, which tended to disprove the alleged newly discovered evidence. In these circumstances, even if the evidence had not been impeaching or had been of such character as would likely have produced a different result on another trial, the judge acting as trior did not err in overruling these grounds.

■ The ruling announced in the seventh headnote does not require elaboration.

*Judgment reversed. All the Justices concur.*