ALLEN *v.* THE STATE.

No. 14234. SEPTEMBER 15, 1942.

*Joseph O. McGehee* and *W. B. Skipworth Jr.,* for plaintiff in error.

*Ellis G. Arnall,* attorney-general, *Hubert Calhoun,* solicitor-general, and *Emil J. Clower,* assistant attorney-general, contra.

REID, Chief Justice. Ost Allen was tried in Muscogee superior court for the murder of Sallie Mae Tarver. The jury returned a verdict of guilty, without a recommendation, and Allen was sentenced to death. His motion for new trial was overruled, and he excepted.

Alice Tarver, a sister of the deceased, and Sammie Lee Epps were two eye-witnesses of the homicide, testifying in behalf of the State. Alice Tarver testified substantially as follows: She and the deceased lived on a farm near Seale, Alabama, and Epps lived on the same farm. On the Saturday afternoon of the killing the two

sisters came to Columbus, .Georgia, going to the Wine House on Front street looking for their sister-in-law; there they met Epps, and as the three were standing together, and Sallie Mae and Epps were talking, Ost Allen, the defendant, walked up behind and toward the left of Sallie Mae and stabbed her with "the switch blade of a pocket-knife," the knife striking her in the front of the left shoulder. The defendant did not say anything to Sallie Mae or the others. Sallie Mae said: "Ost, you done stabbed me! Ost, carry me to the doctor!" Ost didn't say anything. After she was stabbed Sallie Mae walked out of the Wine House, followed by the defendant into the street, and Alice came out also. Sallie Mae and Alice walked to "Mr. Wilson's," which was across the street from the Wine House, to call a doctor, and as Sallie Mae started to come out of Wilson's she fell on the street and died from the wound within about fifteen minutes after she was stabbed. The crime occurred in Muscogee County. Sallie Mae was eighteen years of age when she died. The defendant had gone with and courted Sallie Mae from the time she was about fourteen; but they had not been going together for about two years before the homicide, as she had stopped him from coming to see her, and she had not seen him for some time. The mother of the deceased lived on a farm in Alabama, and her father lived in Columbus; they were not separated, but her father worked in Columbus, and there Allen boarded with the father of the deceased. The testimony of Epps as to what occurred in the Wine House at the time of the homicide was substantially the same as that related by Alice Tarver. In addition he testified that he lived on the same farm on which Sallie Mae and Alice resided. He had been going with another sister of the deceased named Lillial [Lydia?]. He never went with the deceased.

H. M. Adair, chief of detectives of Columbus, a witness for the State, testified that he went to the place of the killing, and found the body of the deceased lying on the sidewalk at the corner of Tenth and Front Streets. He saw where blood had come from the left side of her neck, and on examining the body the next morning at the undertaker's he located the wound at the base of the neck and collar-bone. Such a wound could be produced by the knife which he identified at the trial. He took the knife from the defendant when he arrested him about ten minutes after the homicide, and the knife had blood on it. On the Saturday night, some

hours after the killing, he talked with the defendant, who freely and voluntarily, without any fear of punishment, without any hope of reward promised him, or any threat made against him, made a statement concerning the homicide. The conversation resulting in the admissions or confessions was had on the second floor at police headquarters, when the defendant was not in a cell or locked behind bars. The witness stated: "We were just asking him about the killing." Defendant stated that he was working at the Bibb mill in or near Columbus, and on Friday afternoon after work (the day before the homicide) he bought the knife in a pawn-shop. The next day he had been around the Wine House, and he saw Sallie Mae "sitting in there talking to a colored boy." The defendant did not recognize the boy at that time. He said he walked up to Sallie Mae and stabbed her. He did not recognize Epps, but said that he later found out it was Epps to whom Sallie Mae was talking, and that "if he had known who she was talking to he never would have cut her." He said he killed the deceased because she was talking to this Epps, whom he did not recognize.

The defendant offered nothing at the trial in his behalf, except his own statement, as follows: "I have been gwine with Sallie Mae three years, and I have been knowing her about seven years. She sent word up here by her sister-in-law she was coming up that Saturday and kill me—got mad with me because I was gwine with another woman named Willie Pearl. And I had been taking care of her. She asked me—wanted some money. I asked her how much she wanted, and she said five dollars, and I give her five dollars. And when I seed her that Saturday she made an effort to do what she said she was going to do. That is all I know how it happened. That is all I want to say."

■ In the motion for new trial exception is taken because the charge of the court failed to include the following: "I charge you that the evidence should be so conclusive as to exclude every reasonable doubt," because the court instructed the jury that "The reasonable doubt of the law is one that grows out of the evidence, which rises from the want of evidence or grows out of a conflict in the evidence, and leaves a reasonable mind wavering and unsettled, not satisfied from the evidence;" and because the court failed to instruct the jury that the defendant's statement alone might be sufficient to create or raise a doubt in the mind of the jury. The

contention is made, that the defendant and the jury were deprived of the law of reasonable doubt and how it should be applied; that it was essential for the jury to have been informed that the evidence should be so conclusive as to exclude every reasonable hypothesis save that of the guilt of the accused; that the jury was not instructed as to the credit to be given to the explanation of the defendant; that in this case the doubt did not or might not arise from the evidence, but turned solely on the internal credibility of the explanation given by the defendant; that the jury should have been informed that if they believed the defendant's statement of his explanation of the killing, then that would be sufficient in and of itself a reasonable doubt as to his guilt. In this connection the court charged the jury that "The burden is on the State to rebut the presumption [of innocence] and to show by evidence that the defendant is guilty, before he can be legally convicted. Not only so, but the evidence must be sufficiently strong to satisfy the mind and conscience beyond a reasonable doubt that he is guilty, before they would be authorized to return a verdict against him." The charge given was substantially in the language of the statute on reasonable doubt. Code, § 38-110. In *Wilburn* v. *State,* 8 *Ga. App.* 28 (68 S. E. 460), the court said: "Exception is also taken to the charge of the judge upon the subject of reasonable doubt, wherein the judge told the jury that 'a reasonable doubt is just what the words themselves mean,—a reasonable doubt,—a doubt that grows out of the testimony or out of the want of testimony.' It is contended that this was error, because doubt might arise not merely from testimony, or want of testimony, but from the defendant's statement, which the judge failed to refer to, and that what the judge said upon the subject limited sections 986, 987 of the Penal Code, to the prejudice of the defendant. . . There is no merit in the exceptions to the charge upon reasonable doubt. The succinct definition given by the trial judge was much less apt to confuse the jury than a labored attempt to elaborate a term which is more easily understood when considered from the standpoint of its ordinary significance in the everyday affairs of life."

In the present case elsewhere in the charge the court instructed the jury fully on the defendant's right to make a statement and as to its force and effect, including the instruction: "The law says you may believe that statement in preference to the sworn testimony

in the case. You can believe a part of his statement and reject a part." There was no request for a charge in the language claimed to have been omitted. When the charge instructs the jury as to the law of reasonable doubt and makes no reference to the defendant's statement as furnishing a reasonable doubt, such charge is not erroneous where the judge charges the law as to the defendant's statement and its force and effect. *Fitzgerald* v. *State,* 136 *Ga.* 163 (71 S. E. 128). In *McKee* v. *State,* 174 *Ga.* 120 (2) (162 S. E. 139), an attack was made on the judge's charge on reasonable doubt, on the ground that it did not go far enough, and because the court failed to charge that such a doubt might arise in the minds of the jury in consideration of the statement of the defendant, when no reference to the defendant's statement was given by the court in this connection; and to this contention the court replied: "The charge excepted to, considered in connection with the general charge, was not erroneous for the reason assigned. If the defendant desired further instruction based on the defendant's statement not under oath before the jury, there should have been an appropriate request." See, in this connection, *DuPre* v. *State,* 153 *Ga.* 798 (4), 799 (113 S. E. 428) ; *Lewis* v. *State,* 11 *Ga. App.* 102 (74 S. E. 708). The decision in *Richardson* v. *State,* 70 *Ga.* 825, holding that "In a criminal case the judge should instruct the jury that the evidence, to authorize a conviction, should be of such conclusive character and tendency as to exclude reasonable doubt; and a failure so to charge will cause a new trial, although the attention of the court may not have been called to the omission," is distinguishable from the instant case, because in the *Richardson* case, not only was the attack on the charge unlike the one here made, but there was no attempt to charge upon the law of reasonable doubt at all, while in the present case a charge on the doctrine of reasonable doubt was given substantially in the language of the statute. Since there were two eye-witnesses to the killing, who testified for the State, it was not error to fail to charge that the doubt should be so conclusive as to exclude every reasonable hypothesis save that of the guilt of the accused, because such a charge is applicable only in cases where the State depends on circumstantial evidence to convict. Code, § 38-109; *Paulk* v. *State,* 148 *Ga.* 304 (96 S. E. 417). From the foregoing it is clear that these special grounds of the motion for new trial are without merit for any reason assigned.

■ Another ground complains of a portion of the judge's charge, as follows: "There is no presumption attached to the defendant's statement. No presumption that it is true, nor any presumption that it is not true. In other words, it goes to you without a presumption either for or against him. You have the right to reject the statement entirely if you do not believe it to be true." The plaintiff in error contends such charge was erroneous, in that no such principle as any presumption in connection with a defendant's statement exists in law, and that the last sentence gave emphasis to the theory of rejecting the defendant's statement. A sufficient answer to the criticism may be made by reciting the portion of the charge immediately preceding that complained of, which was as follows: "The defendant, under our law, is permitted to make a statement in his own behalf; and it is your right and duty to weigh and consider that statement. You can believe a part of his statement and reject a part. You have the right, as I have stated, to believe it in preference to the sworn testimony in the case, provided you believe it to be the truth." This portion of the charge, as a whole, contained all of the essential requisites of the statute on the defendant's statement. Code, § 38-415. The mere statement negativing any presumption in connection with the defendant's statement, either for or against it, was at the most merely surplusage, and could not have been of such harm to defendant as to require a reversal on this ground. A charge in substantially the same language as that criticised in this ground was held not erroneous, in *Cornwall* v. *State*, 91 *Ga.* 277 (5) (18 S. E. 154). There is no merit in this ground.

■ It is complained that the court failed to charge the principles of law relative to confessions and admissions of guilt. Upon this ground the contention is urged that evidence introduced tended to establish that the defendant made a confession of his guilt, and that the court left the jury uninstructed as to the principle of law involved in accepting or rejecting such confessions. It may be pointed out that the defendant in his statement did not deny that he made the statements to the State's witness. There was no request for a charge upon the law with reference to admissions or confessions. It is well settled that in the absence of request such charge need not be given. *Patterson* v. *State*, 124 *Ga.* 408 (2), 410 (52 S. E. 534); *Anderson* v. *State*, 190 *Ga.* 455 (4) (9 S. E.

2d, 642) ; *Allen* v. *State,* 187 *Ga.* 178 (3), 180 (200 S. E. 109) ; *Sellers* v. *State,* 99 *Ga.* 212 (25 S. E. 178) ; *Gore* v. *State,* 162 *Ga.* 267 (134 S. E. 36) ; *Nail* v. *State,* 125 *Ga.* 234 (3) (54 S. E. 145). Therefore this ground is without merit.

■ Another portion of the charge challenged is that where the court said : "In the event you should find the defendant guilty under this bill of indictment, which indictment charges murder, it is entirely within your province, if you desire to do so, to recommend that he be punished by confinement in the penitentiary for life. Whether you will or will not make such a recommendation is entirely with you. Should you so recommend, that recommendation will be carried into effect." The basis of the complaint in this ground is that it failed to instruct the jury whether or not they were limited in their right in fixing the punishment or making a recommendation; and that the charge should have been more specific that the jury had the unqualified right to make recommendation of life imprisonment, with or without reason. In *Inman* v. *State,* 72 *Ga.* 269 (6), the court held: "In regard to the right of the jury to recommend imprisonment for life, the better practice is for the court to call the attention of the jury to the law and merely state to them that, if they think proper, they may, in addition to the verdict of guilty, recommend that defendant be imprisoned in the penitentiary for life. This was substantially done in the present case, and the language of the court was not such as was calculated to deprive, circumscribe, or restrict the jury in respect to the exercise of their right of recommendation." A charge on the right of the jury to recommend life imprisonment, somewhat similar to the one in the instant case, was upheld as against an attack that it was calculated to prejudice the jury and prevent the jury from recommending that the prisoner be punished by imprisonment for life, in *Thomas* v. *State,* 129 *Ga.* 419 (6), 420 (59 S. E. 246). Although in his charge in the present case the judge did not use the specific words "with or without reason," the fair meaning of the language which he did use was sufficient to convey to the jury that they might recommend life imprisonment with or without reason. *Hopkins* v. *State,* 190 *Ga.* 180 (2) (8 S. E. 2d, 633). Accordingly, the assignment of error in this ground is not meritorious.

■ The judge did not incorrectly state what the defendant said,

nor was it an expression of an opinion for the court to state to the jury: "The defendant, gentlemen, in his statement describing the killing, among other things, said that the deceased, on this occasion, said that she wanted some money, and he asked her how much she wanted, and she said five dollars, and he gave her five dollars. He further said she sent word by her sister-in-law that she was coming up here that Saturday to kill him, and that when he saw her that Saturday she made an effort to do what she said she was going to do." The assignment of error on this ground is without merit.

■ The plaintiff in error contends that the court erred in charging that provocation by words, threats, menaces, and contemptuous gestures shall in no case be sufficient to free the person killing from the crime of murder; and in failing to charge self-defense or justifiable homicide, because such was an incomplete charge and because the court in the charge assumed the position that the defendant acted in self-defense or upon the theory that he acted under the fears of a reasonable man, in that his life was in danger. The court charged on this subject as follows: "that provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from the crime of murder; and if you believe in this case, gentlemen, that all the woman merely did was a gesture or menace or to make an effort to carry a threat into effect, and the defendant killed under those circumstances, he would be guilty of murder, and you would be authorized under your verdict to so find." The evidence made out a case of murder. Even if the statement of the defendant authorized a charge upon the theory that he acted under the fears of a reasonable man in that his life was in danger, such theory was presented only by the statement of the accused, and there was no request for a charge thereon. The omission, without request, to charge the jury on a theory which finds support only in the prisoner's statement at the trial is not erroneous. *Crawford* v. *State,* 125 *Ga.* 793 (2), 796 (54 S. E. 695); *Rentfrow* v. *State,* 123 *Ga.* 539, 541 (51 S. E. 596); *Hill* v. *State,* 169 *Ga.* 455 (5) (150 S. E. 587); *Felder* v. *State,* 149 *Ga.* 538 (101 S. E. 179); *McLendon* v. *State,* 172 *Ga.* 267 (2) (157 S. E. 475); *Turner* v. *State,* 190 *Ga.* 316 (3) (9 S. E. 2d, 270); *Hardin* v. *State,* 107 *Ga.* 718 (3) (33 S. E. 700); *Richardson* v. *State,* 51 *Ga. App.* 140 (179 S. E. 771); *Kimbrell*

v. *State,* 138 *Ga.* 413 (5) (75 S. E. 252). In view of the foregoing there is no merit in the assignment of error in this ground.

It was shown by the evidence that the killing was committed by the intentional use of a weapon likely to produce death, in an apparently unprovoked and unjustifiable assault by the killer; and such is sufficient to show malice, making other evidence of motive unnecessary. *Barbee* v. *State,* 175 *Ga.* 307 (165 S. E. 232). We have carefully reviewed the evidence, and do not find anything to suggest that a verdict of manslaughter could have been found, as contended by the plaintiff in error. The verdict was supported by the evidence, and there was no error in overruling the motion for new trial. *Judgment affirmed. All the Justices concur.*